Earl Antonio Wilson, Esq.
Law Offices of Earl Antonio Wilson
299 Broadway - Suite 920
New York, NY 10007
Tel: (212) 227-4455
Fax: (212) 385-4844
Email: earl_antonio@yahoo.com

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

GEORGE LAWSON                                    **ECF CASE**
                                                 Case Number: 09 CV 1335 (JSR)
                          Plaintiff,

          -against-                                              **COMPLAINT
                                                                 AND JURY
                                                                 DEMAND**

NEW YORK CITY BOARD OF EDUCATION,
also known as NEW YORK
CITY DEPARTMENT OF EDUCATION, JOEL KLEIN,
LARRAINE PAVARINI,  individually and in their official
capacities
                          Defendants.
-----------------------------------------------------------------------X

## INTRODUCTION

1.  This case involves a pattern and practice of discrimination, harassment and

retaliation against employees of West Indian descent at Middle School 113 in the Bronx ,

a school operated by defendant.   Plaintiff is a black teacher of West Indian descent.

## JURISDICTION

2.  This case arises under 42 U.S.C. §§2000e, et seq., as amended by the Civil

Rights Act of 1991, 42 U.S.C. §1981, New York Executive Law §§290, et seq. and the

New York City Human Rights Law, ("NYC HRL") NYC Admin. Code §8-101 et seq.

Jurisdiction is conferred upon this Court by 42 U.S.C. §§2000e-5(f) and (g) and 28

U.S.C. §§1331, 1343, 2201 and 2202.  Jurisdiction over the state claims is further

invoked pursuant to 28 U.S.C. §1367 and the Court's pendent jurisdiction.

3. Plaintiff Lawson timely filed charges of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") complaining of the unlawful acts alleged herein.  Pursuant to a dual filing arrangement, and in accordance with the EEOC's normal operating procedures, those charges, on information and belief, were also forwarded to and filed with the New York State Division of Human Rights.

4. On or about October 29, 2004, plaintiff Lawson received from the EEOC a right to sue letter authorizing him to pursue this matter by filing a lawsuit within 90 days of receipt of the right to sue letter.  As a result, plaintiff Lawson has fully complied with the statutory and administrative prerequisites for filing an action under Title VII of the Civil Rights Act of 1964.

<u>PARTIES</u>

5. Plaintiff George Lawson is a black, West Indian permanent resident of the United States .  He began working for defendant NYCBOE in September 2000 as a "Preparatory Provisional Teacher (PPT).  From the fall of 2000 through June 2003 he worked as a full time Social Studies teacher and Science teacher at Middle School 113 ("MS 113").  He has a BA and Masters Degree from Hunter College and is currently enrolled in Lehman College Masters Program.  He was terminated by defendant in or about June 2003 as a result of receiving an unsatisfactory rating, and then reinstated in September 2004 when that rating was reversed by defendant NYCBOE.

6. Defendant New York City Board of Education ("NYCBOE") was and is a governmental entity organized under the Education Law of the State of New York.  It was the employer of all parties to the action during the school year 2002-03 and was responsible for all policies and practices set forth herein.  Defendant

Laraine Pavarini was an Assistant Principal at Frank D. Whalen Middle School 135 during the school year 2004-05. Defendant Pavarini was very familiar with the issues surrounding the plaintiff's tenure and termination at Middle School 135. Upon information and belief, she retired between the 2007 and 2008 academic school year and is no longer employed by the Department of Education. Plaintiff filed a lawsuit against other defendants on a virtually identical claim. That claim is filed under Case Number: 05 CV 825.

7. Defendant Pavarini continued the level of discrimination of the other defendants by retaliating against the plaintiff and attempting to illegally keep him from gainful employment.

Background of Prior Claim and Basis of this Claim

8. MS 113 is located in the Bronx. The students are predominantly black, and of West Indian national origin. Many are recent immigrants. A much smaller proportion of the teachers and administration at MS 113 are of West Indian national origin. When plaintiff started working at MS 113, there existed a Caribbean Focus Team ("CFT"), which consisted of several classes of students who had immigrated from the West Indies in the past three years, and teachers of West Indian national origin who were especially assigned to teach them. These teachers included, but were not limited to: plaintiff, Jacqueline Binns, Carmen Dewar, Joanne Smith, Janet Stewart, Harold Moore, and Brenda Williams. During the year beginning September 2002 other teachers were added, including Ms. Laidley and Ms. P. Mitchell. The team was led by Jacqueline Binns. The teachers assigned to the CFT worked together to establish consistent rules, policies and

curricula.  The teachers paid special attention to assimilation issues faced by the students and their parents.  Most of the students in plaintiff Lawson's homeroom were members of the CFT.

9. When plaintiff was first assigned to MS 113, the principal was Cheryl Lugo.  In 2002, Ms. Lugo decided, for the 2002-03 academic year, to consolidate the CFT classes on the third floor, and to place them under the supervision of Assistant Principal Theresa Verderosa.  However, in September 2002, a new Acting Principal, defendant Cleveland Person, was assigned to the school.  Defendant Person is not of West Indian national origin.  Defendant Person assigned Defendant Leia McKinley, an assistant principal, to supervise the third floor instead of Ms. Verderosa.  Defendant McKinley is not of West Indian national origin.  In addition, in the fall of 2002, a family contact person of West Indian descent, Jeffrey McFarlane, who had worked closely with West Indian students, teachers and their families for over five years, was told by Mr. Person that his position was eliminated.  On information and belief, two weeks later he was replaced by a less qualified woman who was not of West Indian descent.

10. In December 2002, in a faculty meeting, defendant Person was discussing the behavior of a student who allegedly defecated on the floor.  He called this a "cultural behavior."  Many of the students in the school are West Indian immigrants or African immigrants.  The West Indian teachers viewed this statement as an insensitive statement toward persons of other national origins and several objected to Mr. Person's characterization.  Defendant Person defended his statement by listing cultures where he believed that defecating on the floor was in

fact a cultural behavior, naming as examples the West Indian countries of Haiti
and the Dominican Republic .  Several teachers complained, including plaintiff,
Carmen Dewar, Jacqueline Binns, George Foster, Janet Stewart, and LeShawn
Jackson.  In addition, various West Indian teachers complained about Mr. Person's
statement to UFT representative Paul Egan and to community leader Hugh
Beckford.  Mr. Beckford, in turn, raised the issue with the District Superintendent,
defendant Filewich..  Other teachers complained to members of the local
Community School Board.  An article concerning defendant Person's statement
appeared in a local West Indian newspaper, The Gleaner Extra, on December 30,
2002 and stories concerning the issue were broadcast on a local radio station
WLIB.

11. On information and belief, at the request of his superiors in the District Office, at a
    UFT meeting, defendant Person spoke to the teachers, saying if he offended
    anyone he was sorry.

12. However, in subsequent weeks, those teachers who had complained about
    defendant Person's statement, including plaintiff, began facing an onslaught of
    further discrimination and retaliation.

13. In January 2003 an anonymous letter was placed in plaintiff Lawson's school
    mailbox and the boxes of other West Indian teachers during the school day.  These
    mailboxes are located in the school office right near defendant Person's office.
    The only persons with access to them are staff, members of the Parents'
    Association and students with special permission.  This anonymous letter
    described those who had complained about defendant Person's statement as "evil

forces".  Plaintiff Lawson complained to the UFT about this letter and also to defendant Polietta.  No action was taken.

14. In addition, defendant Person removed students' work from the bulletin boards of numerous teachers who were members of the Caribbean Focus Team, who were of West Indian national origin, including plaintiff Lawson, Jacqueline Binns, Janice Nelson-Madden, and Joanne Smith.  Defendant Person claimed the students' work displayed wasn't good enough to be shown.  Because most of these teachers' students were recent West Indian immigrants, the results of his actions was to bar the display of these students' work. Bulletin boards of non-West Indian teachers were allowed to remain up even though the work displayed had errors.

15. In addition, West Indian teachers suffered exclusion from various training opportunities, and they and their students were denied access to books, equipment and other resources. For example, a power point workshop was held in the spring of 2003.  No West Indian teachers were invited to participate and invitations were limited to white teachers only.

16. Plaintiff Lawson taught five classes in Social Studies, totaling about 150 students. He was given only 19 textbooks for all 150 to share.  Many of them were defaced, with torn and missing pages. Similarly, Carmen Dewar, another West Indian teacher, who taught science to the same students, was given only 30 books for her 150 students.

17. By contrast, non-West-Indian teachers were given double sets of these same textbooks, so that each of their students had two, one that was kept at home and one that was kept in the classroom.  These teachers, all of whom were white,

included Frank Cassidy, Patty Matone, Philip Althouse, Rachel Selkowitz, Jack

Dean and Paul Egan.  Plaintiff Lawson complained about this situation to

defendants McKinley, Person, and Polietta, but no action was taken.

18. Similarly, plaintiff Lawson was not given a copy of the Teachers' Edition of the

Social Studies text book, while the other social studies teachers, all of whom were

non-West Indian, did receive a copy.  George Foster, a special ed/inclusion teacher

didn't receive a copy of the Teachers' Edition of the Social Studies textbook until

his supervisor complained.

19. Plaintiff Lawson's students were also given very limited access to the library.

When he tried to schedule time in the library for his students, the librarian, who is

not of West Indian national origin, told him he would have to wait 2 - 3 weeks for

access to the library because there was a crowded schedule.  By contrast, classes

of white, non-West Indian teachers were allowed to get immediate access.  These

teachers were even allowed to use the library for wedding showers, baby showers,

birthday parties and staff parties during the school day.  Plaintiff Lawson

complained about lack of access to the library to defendant McKinley who took no

action.

20. For most of the year, almost all of the computers in plaintiff Lawson's classroom

were malfunctioning, and those were subject to repeated acts of vandalism, which

were not redressed.  The damaged and broken computers were not repaired

although the principal, assistant principal and technicians were all on notice of the

problem.  Plaintiff Lawson asked defendant McKinley if he could have access to a

group of unused portable laptops for his students, given the condition of the

computers in his classroom.  Ms. Lugo had previously told him that she had
purchased those laptops especially for the use of the CFT teachers who taught
social studies and science.  However, defendant McKinley refused to let plaintiff
Lawson use them, and the laptops remained unused. Other West Indian teachers
had similar problems, including but not limited to P. Mitchell, Joanne Smith,
Carmen Dewar, Janet Stewart, Brenda Williams, Winston Weir and Norval
Goulbourne.  By contrast, during the school year, several white, non-West Indian
teachers got their computers repaired and supplied with new mice, printers and/or
keyboards.  These included but were not limited to Megan Quinn, Frank Cassidy,
Patty Matone, Jack Dean, and Philip Althouse.  In addition, a group of three or
four students who were non-West Indian, openly vandalized the computers in
plaintiff Lawson's classroom, pulling keys out of the keyboard and throwing them
around.  Defendant McKinley was standing nearby and saw the students.  Despite
plaintiff Lawson's request that she intervene, she took no action.

21. Similarly, plaintiff Lawson requested an overhead projector for use in his
classroom, but his request was denied.  Other West Indian teachers, including but
not limited to Carmen Dewar and Janet Stewart, also requested projectors and their
requests were denied. By contrast, white, non-West Indian teachers received
projectors for classroom use, including but not limited to Megan Quinn, Frank
Cassidy, Patty Matone, and Rachel Selkowitz. Similarly, plaintiff Lawson was not
allowed to use the TV or VCR located in the assistant principal's office, but
another non-West Indian teacher, Mr. M. Caraballo, was.

22. Plaintiff Lawson complained to defendants Person and McKinley in writing on numerous occasions about his and his students' lack of access to books and equipment.  He also complained to defendants Person, Polietta and Lynch. However, no action was taken.

23. Before the school year beginning September 2002, plaintiff and several other Caribbean Focus Team teachers had a practice of meeting with students after school to help them improve their writing skills by having them draft articles for possible publication in <u>The Gleaner</u> and other community newspapers.  During the 2002-03 school year they were told they could no longer use the school facilities for this purpose.  However, white, non-West Indian teachers Philip  Althouse and Mr. J. Shapiro were allowed to use the school gym after school for student basketball practice.

24. Plaintiff also observed that the students of the West Indian teachers, especially the students who were members of the Caribbean Focus Team, were discriminated against and retaliated against by the school administration.  For example, the school set up an after school enrichment program with the stated aim of improving student standardized test scores.  None of the students on the Caribbean Focus Team were invited to participate.  Plaintiff Lawson complained about the exclusion of these students to defendant McKinley, who took no action.  After the parent of one West Indian child complained to NYCBOE officials, that child was admitted to the program.  However, plaintiff Lawson subsequently observed defendant McKinley retaliating against the child by yelling at him about his negative attitude.  The child subsequently reported to plaintiff Lawson that

defendant McKinley on numerous occasions had reprimanded him without provocation.

25. Similarly, on one occasion just as the school day was ending, at 2:20 PM, a West Indian student in plaintiff Lawson's class suffered an accident and had a tooth knocked out. He informed Dean Ivelise Perez, who is not of West Indian national origin. Ms. Perez refused to assist the child and told him there was nothing that could be done because the nurse had gone home. She said it was 2:45 PM and she was off the clock. However, on another day, at about 3:30 PM, a non-West Indian student suffered an injury and plaintiff Lawson observed Ms. Perez assisting the child herself.

26. Plaintiff also observed that his West Indian students appeared to be terrified of defendant McKinley, because of her hostile conduct toward them. For example, during one occasion when defendant McKinley was observing plaintiff Lawson's class, a West Indian student, a recent immigrant, looked up from an examination she was taking. Defendant McKinley, without provocation, yelled "What's your problem?" at the student and threatened to remove her from the classroom. On another occasion, one of plaintiff Lawson's West Indian students looked up while taking a standardized test, and Ms. McKinley yelled at her to put the paper down. Plaintiff never saw Ms. McKinley treat any students in this manner who were not members of the Caribbean Focus Team.

27. In addition, the administration of MS 113, especially defendant Person, was hostile to West Indian parents. For example, Evangelyn Webster, a West Indian parent who was a volunteer in the school, and an active member of the Parents

Association, was called in to a meeting with defendant Person on May 15, 2003 and informed that her privileges in the school were being suspended indefinitely. Ms. Webster had previously complained to the District Superintendent and others about defendant Person's "cultural behavior" statement. Ms. Webster's suspension was only revoked after she complained directly to the Chancellor.

28. As a result of plaintiff Lawson's complaints of discrimination, and his comments on various other matters of public concern involving the education of the children and the treatment of the teachers, he has suffered from a pattern of retaliation. This began during the school year 2002-03 with unfounded complaints about his performance. For example, he was twice written up because allegedly his class was waiting for him in the hallway at the start of homeroom period. However, at the same time the classes of non-West Indian teachers Eric Mandorf, Rachel Selkowitz, and Mr. W. Lulow were waiting for them in the hallway, and those teachers were not disciplined. On another occasion, a non-West Indian teacher, Ms. Colon and plaintiff Lawson entered the building together. He was disciplined for lateness and she wasn't.

29. Those West Indian teachers who complained about Mr. Person's behavior were also observed by the administration more frequently than other teachers. For example, plaintiff Lawson was observed twice in 2002-3, as were Janet Stewart, George Foster and Brenda Williams. Some white teachers, such as Vincent Richards, were not observed at all. On information and belief Mr. Caraballo, who is not of West Indian national origin has not been observed in about five years.

30. In May and June 2003, numerous West Indian teachers at MS 113 were told that they were going to be given Unsatisfactory ("U") performance ratings, including but not limited to, plaintiff, Brenda Williams, P. Mitchell, Delcia Calwood, George Foster, Stephanie Jackson, and A. Laidley.  In addition, one African-American teacher, LaShawn Jackson, who had previously complained about Mr. Person's December 2002 comment, was told she was going to be given a U rating. A U rating results in the termination of a non-tenured teacher.  All of these teachers were told that if they submitted their resignations, their U ratings would be changed to S, or Satisfactory ratings.  On information and belief, not a single white teacher was given a U rating.

31. Plaintiff Lawson did not submit a resignation letter and chose to appeal his U rating.

32. On or about June 13, 2003 plaintiff Lawson received a letter from Mr. Person stating that his services would be no longer needed at MS 113.

33. On June 17, 2003 a student in one of plaintiff Lawson's classes found copies of an anonymous letter in the classroom.  It was addressed, "To all the Barbarians and Banana Boat Niggers in MS 113" and it named various West Indian teachers, including plaintiff Lawson, Binns, Moore, Smith, Dewar, Stewart, Laidley, Nelson-Madden, Mitchell, Foster and B. Williams.  The letter contained obscene and racially offensive language and stated that the named teachers would all be removed from the school. On information and belief, the school administration did not immediately report this to defendant NYCBOE and did not report it to the police.  Ms. Dewar reported it to the local precinct and they said they had not

heard about it before and that the school safety officer and the principal were supposed to have reported it.

34. Plaintiff Lawson reported the letter to Jacqueline Binns, the head of the Caribbean Focus Team, and she said she would report it to defendant Person. At the urgent request of many teachers, defendant Person finally agreed to hold a meeting concerning the letter. He said he would make an effort to investigate the letter, but plaintiff was never notified that further action was taken.

35. Plaintiff Lawson made a complaint of discrimination and retaliation to defendant NYCBOE's Office of Educational Opportunity. By letter dated July 16, 2003 his complaint was rejected.

36. On information and belief, for the school year September 2003, no West Indian teachers were hired at MS 113 to replace the numerous teachers who were forced to resign as a result of their U ratings. The Caribbean Focus Team was disbanded. The West Indian teachers who remained continued to suffer from discrimination and retaliation. For example, West Indian teachers with seniority, including but not limited to: Jacqueline Binns, Janet Stewart, and Carmen Dewar were moved out of their homerooms and required to float. On information and belief, their homerooms were given to non-West Indian teachers. On information and belief, Stewart and Dewar were only restored to their homerooms after they were required to complaint to the district office and to their union. Binns, the former head of the CFT, was never restored to her homeroom, on information and belief.

37. Plaintiff Lawson was informed at the beginning of the 2003 school year that he could work at another school while his U rating was being appealed and he began

working at CIS 22.  However, he subsequently learned that he was only compensated as a substitute teacher, with none of the benefits associated with a regular position.  At the end of October 2003 he was instructed to stop coming to work at CIS 22.   On or about January 10, 2004 he learned from a teachers' union chapter leader at CIS 22, that he was not going to be allowed to work again at CIS 22, because defendant Person had intervened, speaking directly with the principal of CIS 22, Marc Etienne, and strongly advising that he not hire plaintiff Lawson back.

38. On or about January 27, 2004, plaintiff Lawson received a letter from defendant NYCBOE dated January 15, 2004, stating that his application to be a licensed teacher had been denied because of the U rating – even though he had previously, on December 3, 2003, received a license from defendant NYCBOE, effective until August 31, 2005.

39. On or about February 26, 2004, as a result of a grievance filed by the UFT, defendant NYCBOE reversed plaintiff Lawson's U rating for the school year 2002-03.  He was given a position at another NYCBOE middle school beginning in September 2004.  He received no back pay, nor were his seniority and benefits restored as a result of his termination during the 2003-04 school year.

40. Plaintiff Lawson timely filed a charge with the federal Equal Employment Opportunity Commission on August 11, 2004.  He received a notice of right to sue on or about October 29, 2004.

41. Plaintiff Lawson filed a notice of claim with defendant NYCBOE on February 10, 2004.

42. Defendants' actions were wanton and reckless and were done in such a manner and under such circumstances as to show heedlessness and an utter disregard of the results upon the rights of plaintiff that may flow from the aforesaid acts or the manner in which they were done.

43. Defendants' actions and the actions as pleaded above were malicious and were done deliberately with knowledge of plaintiff's rights and with intent to interfere with those rights even after plaintiff was duly reinstated and assigned to another school.

**Additional Facts Since Reinstatement**

44. On September 13th, 2004 plaintiff reported for duty as a social studies teacher, at Middle School 135, located at 2441 Wallace Avenue, in the Bronx. This school is in District 11, which falls in Region 2.

45. Plaintiff was instructed by Region 2 Deputy Superintendent Jose Ruiz to report for duty there. This he did verbally as well as by letter.

46. Upon arrival at the school, plaintiff reported to Principal Marcel Kshensky, handing him the letter he received from Ruiz. The reaction of the principal was an angry one, as he abruptly pushed the letter back into plaintiff's hands and told him that a vacancy no longer existed and that he had hired someone else for the position.

47. Kshensky only offered Plaintiff only a position of a substitute/per diem teacher but refused it, as it would have ruined his chances for tenure in addition to violating the terms of his reinstatement as a social studies teacher.

48. This incident began a series of events that let to the continuation of the suffering of plaintiff at the hands of defendant and its agents in retaliation for his protected activity in the prior action.

49. Plaintiff was treated in an inferior manner to other teachers, mainly white, in a retaliatory fashion, including but not limited to:

a) Assistant Principal and direct supervisor Mary Gorman, who is white and non Caribbean, on one occasion, questioned plaintiff about his prior problem /lawsuit against Gorman's former co-worker and close associate Leia McKinley, an original defendant in this matter;

b) Intolerance for his employment by the Principal, Mr. Kshensky; a white and non Caribbean male who, upon information and belief, was aware of plaintiff's prior complaints of discrimination complaints at his school;

c) Negative comments by the Principal here he stated commented on his relief that plaintiff was "not tenured," thereby implying that he could be terminated easily;

d) Student arrested for punching a white, non-Caribbean teacher, Johansson, who had not complained of discrimination while numerous attacks on plaintiff were treated lightly, or ignored altogether;

e) Requests to have a violent student, Bonilla, who attacked plaintiff on several occasions, removed from plaintiff's class

denied while requests by a white non-Caribbean co-worker McKegan, who had not complained of discrimination for the same student was upheld;

f) White, non Caribbean co-workers Stan Blauser, who had not complained of discrimination and S. Koehler, who had not complained of discrimination were forewarned that they were in danger of receiving a U Rating while plaintiff was not warned at all in violation of the collective bargaining agreement;

g) Proper procedures not being followed in that plaintiff was issued a U Rating without being observed by the Principal in violation of the collective bargaining agreement;

h) Plaintiff was never observed by his subject supervisor, Sharon Montes;

i) Instead, plaintiff was the only teacher on the third floor observed by Lorraine Pavarini who was not plaintiff's subject or floor supervisor and who was not qualified to observe or make recommendations on plaintiff's work;

j) Having been given a U Rating, plaintiff was not given the option of a transfer by the Principal while others issued a U Rating, such as Blauser, were allowed to transfer to another school and not terminated;

k) Submitting plaintiff's GHI application seven months after assuming duties while white colleagues' applications were submitted early;

l) Plaintiff was falsely cited for corporal punishment while allegations made against his white colleagues, Ms. M. DeKennip, was never reported to the Office of Special Investigation (OSI) in keeping with Chancellor Regulation C-110.

**Newest Allegations**

50. The subject of this new claim is based on continued retaliation by members of the Department of Education against the plaintiff. The retaliation has led to untold loss of employment or employment opportunities for plaintiff. Those opportunities, likely destroyed by defendants by outright disparagement of plaintiff, has caused plaintiff severe emotional distress as well as financial degradation. Some evidence of those actions were discovered by plaintiff and plaintiff has copies of tapes to prove the conversations that existed to that effect.

51. In late December 2007, Ms. Maria George, an employee of a prospective employer, Primerica, made a call to the Department of Education and spoke to assistant principal Laraine Pavarini.

52. After being informed that Ms. George was performing a routine check of prior employers, Ms. Pavarini agreed to answer some questions about the plaintiff.

53. During the discourse defendant Pavarini dragged plaintiff 'over the coals,' and unleashed a blistering and nasty attack on plaintiff.

54. She informed Ms. George, among other things, that plaintiff did not complete his tasks on time; does not take direction well; does not get along well with other people; that he has a lawsuit against the Department of Education because they denied him tenure; and now he was coming after them and that he was denied tenure at another school, and that she had not much nice things to say about him.  These statements were blatantly retaliatory.

55. Defendant Pavarini proceeded to inform Ms. George that this was the second school he was going through the same thing. She indicated that he created a "lot of problems" there and that he has a lawyer and that now plaintiff was trying to "get a job."  She went on to tell me, "I don't think you want this trouble". She also indicated to me that the school was having a hearing with him in January (2008), referring to the U rating hearing of that date.

56. She accused him of having her investigated separate and aside in her private life that had nothing to do with issues regarding the plaintiff.  Defendant Pavarini went on to make a threatening remark regarding Mr. Lawson,"If he was here I would wring his neck," because of alleged problems plaintiff allegedly caused.  Ms. Pavarini stated that she was called downtown and that it took "two years to fight this man."  She went on to state that Ms. George's company could hire plaintiff at their own risk "but God forbid if you do something he doesn't like…"

57. Defendant Pavarini continued to discuss a prior lawsuits and their outcome as it related to plaintiff in that plaintiff won a prior U rating hearing "on a technicality." Some comments were outright insults, with defendant calling plaintiff an "Odd Bird."

58. Most notably, perhaps realizing that her inflammatory statements about the plaintiff were prevarications, defendant Pavarini tried to secure confidentiality by requesting that Ms. George not inform the plaintiff about the conversation and the disclosures she made to Ms. George. Ms. George will subsequently file an affidavit to further detail the conversation and, in addition, a recording of the conversation will be provided to opposing counsel as soon as possible.

59. Plaintiff filed a Complaint with the EEOC with regard to the Title VII violations above and was given a right to sue letter on November 14, 2008. Plaintiff now brings a separate action for retaliation based on the issues in the prior matter.

## FIRST CAUSE OF ACTION

60. Plaintiff Lawson repeats and realleges the allegations contained in paragraphs 1- 59 as if fully set forth herein. The defendants, in violation of 42 U.S.C. §§2000e, et seq., as amended, discriminated against plaintiff on the basis of his national origin by harassing him, by creating, maintaining, condoning, acquiescing in, and supporting a hostile work environment for West Indian employees including plaintiff, and by refusing to take prompt and effective action to remedy this hostile work environment, and by discriminating against him in the terms and conditions of his employment.

## SECOND CAUSE OF ACTION

61. Plaintiff Lawson repeats and realleges the allegations contained in paragraphs 1- 60 as if fully set forth herein. The defendants, in violation of 42 U.S.C. §2000e, et seq., as

amended, discriminated against plaintiff on the basis of his national origin by terminating him.

## THIRD CAUSE OF ACTION

62.  Plaintiff Lawson repeats and realleges the allegations contained in paragraphs 1- 61 as if fully set forth herein.  Defendants, in violation of New York Executive Law §290 et seq. discriminated against plaintiff on the basis of his national origin by creating, maintaining, condoning, acquiescing in, and supporting a racially hostile work environment for West Indian employees, and by refusing to take prompt and effective action to remedy this hostile work environment and by discriminating against him with regard to the terms and conditions of his employment.

## FOURTH CAUSE OF ACTION

63.  Plaintiff Lawson repeats and realleges the allegations contained in paragraphs 1-62 as if fully set forth herein.  Defendants, in violation of New York Executive Law §290 et seq., discriminated against plaintiff on the basis of his national origin by terminating him.

## FIFTH CAUSE OF ACTION

64.  Plaintiff repeats and realleges the allegations contained in paragraphs 1-63 as if fully set forth herein.  Defendant, in violation of NYC Admin. Code §8-107(1)(a), et  seq., as amended, discriminated against plaintiff on the basis of his national origin by racially harassing him, by creating, maintaining, condoning, acquiescing in, and supporting a hostile work environment for West Indian employees, and by refusing to take prompt and effective action to remedy this hostile work environment, and by discriminating against him in the terms and conditions of his employment.

## SIXTH CAUSE OF ACTION

65. Plaintiff repeats and realleges the allegations contained in paragraphs 1-64 as if fully set forth herein. Defendants, in violation of NYC Admin. Code §8-107(1)(a) et seq., as amended, discriminated against plaintiff on the basis of his national origin by terminating him.

## SEVENTH CAUSE OF ACTION

66. Plaintiff repeats and realleges the allegations contained in paragraphs 1-65 as if fully set forth herein. Defendant violated 42 U.S.C. Sec. 1981 by discriminating against plaintiff on the basis of his ancestry.

## EIGHTH CAUSE OF ACTION

67. Plaintiff repeats and realleges the allegations contained in paragraphs 1-66 as if fully set forth herein.

68. Defendants, acting under color of state law, deprived plaintiff of his constitutionally protected right to free speech in violation of 42 U.S.C. Sec. 1983.

## NINTH CAUSE OF ACTION

69. Plaintiff repeats and realleges the allegations contained in paragraphs 1-68 as if fully set forth herein.

70. Defendants, acting under color of state law, deprived plaintiff of his constitutionally protected right to equal protection under the law in violation of 42 U.S.C. Sec. 1983.

## TENTH CAUSE OF ACTION

71. Plaintiff repeats and realleges the allegations contained in paragraphs 1-70 as if fully set forth herein.

72. Defendants, acting under color of state law, deprived plaintiff of his constitutionally protected right to due process of law in violation of 42 U.S.C. Sec. 1983.

<u>ELEVENTH CAUSE OF ACTION</u>

73. Plaintiff repeats and realleges the allegations contained in paragraphs 1 -

72 as if fully set forth herein.

74. Defendants violated plaintiff's rights to free speech as protected by the

New York State Constitution, Article 1, Section 8..

<u>TWELFTH CAUSE OF ACTION</u>

75. Plaintiff repeats and realleges the allegations contained in paragraphs 1 –

74 as if fully set forth herein.

76. Defendants violated plaintiff's rights to equal protection and freedom from

discrimination as protected by the New York State Constitution, Article 1,

Section 11.

<u>THIRTEENTH CAUSE OF ACTION</u>

77. Plaintiff repeats and realleges the allegations contained in paragraphs 1 -

76 as if fully set forth herein.

78. Defendants violated plaintiff's rights to due process of law as protected by

the New York State Constitution, Article 1, Section 6.

79. A copy of this complaint has been served on the New York City Human

Rights Commission and the New York City Department of Law.

<u>FOURTEENTH CAUSE OF ACTION</u>

80. Plaintiff repeats and realleges the allegations contained in paragraphs 1-79

as if fully set forth herein.

81. Defendants violated plaintiff's rights and discriminated further against him

because of his prior protected activity by engaging in a pattern of

retaliation against him in violation of 42 USC 1981.

82. Plaintiff, though given another position in a different school, continued to suffer discrimination and was treated in an inferior manner to other teachers as his supervisors were motivated to retaliate against him for his prior involvement in a Complaint against the Defendant.

83. In addition, defendants continued the retaliation by disparaging plaintiff before at least one prospective employer, and possibly more, ensuring that plaintiff would not get gainful employment in order to sustain himself and mitigate his damages, in complete contravention of the law.  Plaintiff has worked sporadically since his termination from the Department.

<u>FIFTEENTH CAUSE OF ACTION</u>

84. Plaintiff repeats and realleges the allegations contained in paragraphs 1-83 as if fully set forth herein.

85.  Defendants violated plaintiff's rights and discriminated further against him because of his prior protected activity by engaging in a pattern of retaliation against him in violation of New York Executive Law §§290, <u>et seq</u>.

86. Plaintiff, though given another position in a different school, continued to suffer discrimination and was treated in an inferior manner to other teachers as his supervisors were motivated to retaliate against him for his prior involvement in a Complaint against the Defendant.

87. In addition, defendants continued the retaliation by disparaging plaintiff before at least one prospective employer, and possibly more, ensuring that plaintiff would not get gainful employment in order to sustain himself and

mitigate his damages, in complete contravention of the law.  Plaintiff has

worked sporadically since his termination from the Department.

<u>SIXTEENTH CAUSE OF ACTION</u>

88.    Plaintiff repeats and realleges the allegations contained in paragraphs 1-87

as if fully set forth herein.

89.    Defendants violated plaintiff's rights and discriminated further against

him because of his prior protected activity by engaging in a pattern of

retaliation against him in violation of the New York City Human Rights

Law, ("NYC HRL") NYC Admin. Code §8-101 <u>et</u> <u>seq.</u>

90.    Plaintiff, though given another position in a different school, continued to

suffer discrimination and was treated in an inferior manner to other

teachers as his supervisors were motivated to retaliate against him for his

prior involvement in a Complaint against the Defendant.

91.    In addition, defendants continued the retaliation by disparaging plaintiff

before at least one prospective employer, and possibly more, ensuring that

plaintiff would not get gainful employment in order to sustain himself and

mitigate his damages, in complete contravention of the law.  Plaintiff has

worked sporadically since his termination from the Department.

WHEREFORE, plaintiff respectfully demands:

That this Court declare that defendants' actions, including its actions in retaliation

after plaintiff's reinstatement as well as after his filing of the lawsuit in 2005, constitute

illegal discrimination in violation of Title VII, as amended, the New York Executive Law

§§290, <u>et</u> <u>seq</u>. and NYC Admin. Code §8-107(1)(a), and a violation of plaintiff's rights

under the United States and New York State Constitution.

That a permanent injunction be entered ordering defendants to restore plaintiff's back pay, seniority and all other benefits and directing defendants and their employees and agents to cease and desist from any and all acts of discrimination against plaintiff and other employees of West Indian ancestry, including but not limited to eradication of the hostile work environment suffered by West Indian employees.

That plaintiff be awarded appropriate compensation for his loss of earnings.

That plaintiff be awarded compensatory damages against the defendants in the amount of $2,000,000 each.

That plaintiff be awarded punitive damages against the defendants in the amount of $2,000,000 each.

That plaintiff receive of the defendants reasonable attorneys' fees, together with all Court costs.

That this Court grant such additional relief as the interests of justice may require.

<u>DEMAND FOR TRIAL BY JURY</u>

Plaintiff hereby demands, pursuant to Rule 38 of the Federal Rules of Civil Procedure, a trial by jury of this action.

Dated:  New York , New York          Yours, etc.,

        February 12, 2009

_____
Earl Antonio Wilson, Esq.
Attorney for Plaintiff

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**    Case No.: 09 CV 1335(JSR)

_____

GEORGE LAWSON                                        **ECF CASE**

      Plaintiff,


          -against-


NEW YORK CITY BOARD OF EDUCATION,
also known as NEW YORK
CITY DEPARTMENT OF EDUCATION, LARRAINE
PAVARINI,  individually and in her official capacity


                Defendants.
-------------------------------------------------X
_____

### COMPLAINT IN A CIVIL CASE

_____
**Signature (Rule 130-1.1-a)**


_____
**Earl Antonio Wilson, Esq.**
Attorney for Plaintiff George Lawson
LAW OFFICES OF EARL ANTONIO WILSON
299 Broadway – Suite 920

New York, NY 10007

(212) 227-4455


_____


**To: Corporation Counsel of the Cit y of New York**
**100 Church Street**
**New York, NY 10007**
_____
**Service of a copy of the within document is hereby admitted.**


**Dated: _____**
_____