UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

GEORGE LAWSON,                          :

                Plaintiff,     :

   -against-                          :

NEW YORK CITY BOARD OF                  :
EDUCATION, a/k/a "New York City
Department of Education", JOEL          :
KLEIN and LARRAINE PAVARINI,
individually and in their               :
official capacities,
                                        :

              Defendants.     :

----------------------------------X



09 Civ. 1335 (JSR)(HBP)

REPORT AND
RECOMMENDATION

      PITMAN, United States Magistrate Judge:

      TO THE HONORABLE JED S. RAKOFF, United States District

Judge,

I.  Introduction

      In this action, plaintiff principally alleges that his

former employer discriminated and retaliated against him.

Plaintiff, a former teacher employed by the New York City Depart-

ment of Education ("DOE"), alleges that he was discriminated

against on the basis of his national origin by being (1) sub-

jected to a hostile working environment, (2) subjected to unequal

terms and conditions of employment and (3) wrongfully terminated,

all in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. (Complaint, dated Feb. 12, 2009 (Docket Item 1), ("Compl.") ¶¶ 2, 60-61).  Plaintiff also alleges (1) parallel discrimination claims under the New York State Executive Law § 290 et seq. and the New York City Administrative Code §§ 8-107(1)(a) et seq. (Compl. ¶¶ 62-65), (2) claims for violations of his First Amendment right to free speech and his Fourteenth Amendment rights to due process and equal protection of the law (Compl. ¶¶ 67-72), (3) parallel constitutional claims under the New York State constitution (Compl. ¶¶ 73-79), (4) a claim for discrimination and retaliation in violation of 42 U.S.C. § 1981 (Compl. ¶¶ 66, 80-83); and (5) parallel retaliation claims under New York State Executive Law and the New York City Administrative Code (Compl. ¶¶ 84-91).

By notice of motion filed July 1, 2011 (Docket Item 22), defendants move for summary judgment dismissing all claims. Plaintiff filed a Memorandum of Law in Opposition to this motion on July 5, 2011 (Plaintiff's Memorandum of Law in Opposition, dated March 28, 2011 (Docket Item 30), ("Pl.'s Mem. in Opp.")) and separately filed additional exhibits to that memorandum on the same date (Docket Item 31).  Defendants filed a Memorandum of Law in Further Support of their motion on July 1, 2011 (Defendants' Memorandum of Law in Further Support, dated July 1, 2011

2

(Docket Item 28), ("Def'ts' Mem. in Further Supp.")).[1]  For the reasons set forth below, I respectfully recommend that defendants' motion be granted in part and denied in part.

II.  Facts

    A.  Facts Alleged in
       the Complaint

       Plaintiff's complaint alleges the following facts.

       In the fall of 2000, plaintiff began working as a full time Social Studies and Science teacher in Middle School 113 ("MS 113") in the Bronx (Compl. ¶¶ 5, 8).  According to plaintiff, the student body of MS 113 is predominantly black and of West Indian national origin; a "much smaller" proportion of the teachers and administration are of West Indian national origin (Compl. ¶ 8).  When plaintiff commenced teaching at MS 113, the school had a Carribean Focus Team ("CFT") which plaintiff describes as being comprised of students who had immigrated from the West Indies within the last three years, and teachers of West Indian national origin who were assigned to teach them and assist them with assimilation issues (Compl. ¶ 8).

---

[1]It appears that the parties exchanged their submissions prior to electronically filing these documents.  Resultantly, the filing dates and the dates on the documents themselves differ.

The events giving rise to plaintiff's claims allegedly began in September 2002 when a new acting principal, Cleveland Person, who is not of West Indian ancestry, was assigned to MS 113 (Compl. ¶ 9).  In December of that year,

> in a faculty meeting, defendant[2] Person was discussing the behavior of a student who allegedly defecated on the floor.  He called this a "cultural behavior."  Many of the students in the school are West Indian immigrants or African immigrants.  The West Indian teachers viewed this statement as an insensitive statement toward persons of other national origins and several objected to Mr. Person's characterization.  Defendant Person defended his statement by listing cultures where he believed that defecating on the floor was in fact a cultural behavior, naming as examples the West Indian countries of Haiti and the Dominican Republic . . . .

(Compl. ¶ 10).  Several teachers at MS 113, including plaintiff, complained about Person's comments to both the United Federation of Teachers, a local community leader and others (Compl. ¶ 11). Plaintiff does not identify any complaints that he made personally.  As a result of the negative response to Person's comments, he subsequently apologized for the remarks to the faculty at MS 113 (Compl. ¶ 11).

---

[2]Throughout plaintiff's complaint, he identifies several individuals as defendants who are not defendants in the present action, including Person.  This probably results from the fact that the complaint in this action was copied, in part, from the complaint in Docket No. 05 Civ. 825 in which Person and others were defendants.

Despite the apology, however, plaintiff alleges that the teachers who complained about Person's comments, including plaintiff, were subsequently subjected to both discrimination and retaliation (Compl. ¶ 12).  In January 2003, plaintiff and other West Indian teachers received an anonymous letter at school allegedly describing those who had complained about Person's statements as "'evil forces'" (Compl. ¶ 13).  Plaintiff claims he complained to the United Federation of Teachers and "defendant Polietta" about the letter but neither took any action.  Person also allegedly removed the work of plaintiff's students, who were mostly West Indian, and work of the West Indian students of other West Indian teachers from school bulletin boards, claiming that he removed the work because it contained errors and did not merit being displayed as exemplary.  Plaintiff claims that the works of non-West Indian students, however, were not subjected to the same standard (Compl. ¶ 14).

Plaintiff alleges several other instances in which West Indian and non-West Indian teachers were treated unequally.  In 2003, West Indian faculty were allegedly excluded from training opportunities and were denied access to books, equipment and other resources (Compl. ¶ 15).  Specifically, plaintiff alleges that he was given only nineteen social studies textbooks to share among his one hundred and fifty students (Compl. ¶ 16) while non-

5

West Indian teachers were given two copies of the same textbooks for each of their students so that the students could keep one copy in school and one at home (Compl. ¶ 17). Plaintiff also alleges that he was not given a copy of the teacher's edition of the social studies textbook while non-West Indian teachers did receive this edition (Compl. ¶ 18). Plaintiff also claims that his students were given very limited access to the school library, while non-West Indian students were granted greater access[3] (Compl. ¶ 19).

Plaintiff also alleges that West Indian teachers generally lacked access to equipment that non-West Indian teachers had. For example, plaintiff alleges that most of the computers provided to plaintiff's classes were broken and not repaired despite requests for repairs and despite the presence in the school of a cache of unused, operational computers (Compl. ¶ 20). Plaintiff goes on to allege that the computers provided to non-West Indian students were in good order and that non-West Indian students were permitted to vandalize the computers in plaintiff's classroom (Compl. ¶ 20). Plaintiff also alleges that he and other West Indian faculty members were denied access to overhead

---

[3]The Complaint does not detail the frequency with which West Indian students and non-West Indian students were granted access to the library.

projectors, while non-West Indian faculty members were issued

such projectors for use in their classrooms (Compl. ¶ 21).

Likewise, plaintiff claims he was not permitted to use the

television or VCR in the assistant principal's office while a

non-West Indian teacher was allowed to do so (Compl. ¶ 21).

Plaintiff also alleges that he was denied access to

school facilities to provide extra help to students with their

writing while white, non-West Indian faculty were granted access

to the school's gym for student basketball practice (Compl.

¶ 23).  Plaintiff further alleges that West Indian students were

denied access to after-school enrichment programs (Compl. ¶ 24),

were denied medical treatment after school hours on terms equal

to the treatment provided to non-West Indian students (Compl.

¶ 25) and were admonished more harshly than non-West Indian

students (Compl. ¶ 26).  He also claims that members of the

school administration were hostile to West Indian parents (Compl.

¶ 27).

Plaintiff claims that he complained of the disparate

treatment afforded to him and other West Indian faculty members

but that no remedial action was taken (Compl. ¶ 22).

Plaintiff further alleges that as a result of his

complaints of discrimination and "his comments on various other

matters of public concern involving the education of the children

and the treatment of the teachers" he was subjected to a pattern of retaliation (Compl. ¶ 28). Specifically, he claims that he was subjected to unjustified "write ups" concerning his performance while non-West Indian teachers were not written up for engaging in identical conduct, and that he was written up for lateness while non-West Indian teachers who arrived at school at the same time as plaintiff were not (Compl. ¶ 28). He also alleges that he and other West Indian teachers were subjected to more frequent monitoring than other teachers (Compl. ¶ 29).

Plaintiff claims that in May and June 2003, he and other West Indian teachers were advised that they would receive unsatisfactory performance reviews for the year, which would result in their termination, and were given a choice of either resigning or being terminated (Compl. ¶ 30). Plaintiff refused to resign and instead appealed this review, and was terminated on or about June 13, 2003 (Compl. ¶¶ 31-32).

Plaintiff further claims that four days after his termination, a student found copies of an anonymous letter in plaintiff's classroom. "It was addressed, 'To all the Barbarians and Banana Boat Niggers in MS 113' and it named various West Indian teachers, including plaintiff Lawson . . . . The letter contained obscene and racially offensive language and stated that the named teachers would all be removed from the school" (Compl.

¶ 33).  Plaintiff claims that the school's administration did not report the letter to either the New York City Board of Education ("BOE") or the police (Compl. ¶ 33).  After receiving numerous complaints about the letter, acting principal Person promised to make an effort to investigate the letter but took no action (Compl. ¶ 34).  The Complaint contains no allegations connecting the anonymous letter to defendants.

Plaintiff claims that he complained of discrimination and retaliation to the BOE's Office of Educational Opportunity at some unspecified time, but that the complaint was rejected on July 16, 2003 (Compl. ¶ 35).

Plaintiff also notes that no West Indian teachers were hired to replace the West Indian teachers who were terminated from MS 113 in June 2003, and the West Indian teachers who did remain at MS 113 lost their home room assignments and were required to "float" (Compl. ¶ 36).  It is not clear from the Complaint whether "floating" or having an assigned home room was more desirable, or what the demands of each assignment were.

Because the appeal from his rating for the 2002-03 school year was still pending, plaintiff was rehired to teach at CIS[4] 22 in the fall of 2003 (Compl. ¶ 37).  He was, however,

---

[4]Plaintiff does not define "CIS" in his Complaint.

9

compensated at the lower rate paid to substitute teachers and did not received any of the fringe benefits provided to full-time teachers (Compl. ¶ 37). Plaintiff was instructed to stop coming to work at CIS 22 in October 2003, and he was terminated from his position in January 2004. Plaintiff alleges that he was terminated because Person had intervened with the principal of CIS 22 and advised him not to hire plaintiff back (Compl. ¶ 37).

In January 2004, the BOE formally denied plaintiff a license to teach due to the unsatisfactory rating he had received for the 2002-03 school year. Plaintiff had previously been granted a license that was valid through August 2005 (Compl. ¶ 38).

The United Federation of Teachers subsequently filed a grievance on plaintiff's behalf which resulted in the reversal of plaintiff's unsatisfactory rating and his reinstatement at a middle school in September 2004; he was not, however, awarded back pay or seniority credit for the portion of the 2003-04 year that he did not work (Compl. ¶ 39). Plaintiff filed a grievance with the Equal Employment Opportunity Commission ("EEOC") on August 11, 2004 and received a notice of the right to sue on or about October 29, 2004 (Compl. ¶ 40). Plaintiff filed a notice of claim with the BOE on February 10, 2004 (Compl. ¶ 41).

10

In September 2004, the Deputy Superintendent Jose Ruiz of Region 2 in the Bronx directed plaintiff to report for work as a social studies teacher at Middle School 135 ("MS 135") (Compl. ¶¶ 44-45). However, when plaintiff arrived, the principal gave plaintiff a letter from Ruiz informing him that the position to which plaintiff had been assigned was no longer available and the only position available was a substitute/per diem position (Compl. ¶¶ 46-47). Plaintiff refused to accept this position (Compl. ¶ 47).

Despite the Complaint's clear allegation that plaintiff refused the substitute/per diem position he was offered at MS 135, it goes on to allege that plaintiff was mistreated in a number of ways that suggest plaintiff did accept the position. Plaintiff adds in his Rule 56.1 Statement that "[u]ltimately Kshensky was forced to back down and accept plaintiff as a teacher" (Plaintiff's Statement of Material Facts Relating to Defendants' Motion for S ummary Judgment, dated March 25, 2011 (Docket Item 29-1), ("Pl.'s 56.1 Statement") ¶ 10).[5] Plaintiff

---

[5]Plaintiff's attorney submitted his declaration to my chambers (Declaration of Earl Wilson, undated (Docket Item 29), ("Wilson Decl.")), along with a letter dated March 28, 2011 stating that he was unable to electronically file the documents attached to his declaration. However, it appears that many of these documents were filed when the Wilson Decl. was electronically filed (Docket Item 29) as attachments to that
(continued...)

then alleges that the principal at MS 135 commented that plaintiff was not tenured, implying that he could be easily fired (Compl. ¶ 49(c)), that a student was arrested for punching a white non-Caribbean teacher while physical attacks on plaintiff were either ignored or treated more lightly (Compl. ¶ 49(d-e)), that white non-Carribean faculty members were warned of impending negative performance reviews while plaintiff received no such warnings (Compl. ¶ 49(f)), that the issuance of an unsatisfactory rating to plaintiff did not comply with the operative of provisions of the parties' collective bargaining agreement (Compl. ¶ 49(g)), that plaintiff was singled out for observation (Compl. ¶ 49(i)), that after receiving an unsatisfactory rating, plaintiff was not given the same opportunity to transfer that was given to other teachers (Compl. ¶ 49(j)) and that plaintiff was falsely accused of inflicting corporal punishment on a student while similar allegations against white faculty members were not

---

[5](...continued)
document as well as to plaintiff's Memorandum of Law in Opposition (Docket Item 30), and several were separately docketed (Docket Item 31). The documents were electronically filed in an order which differs from that listed in Wilson's declaration; I have cited to these documents in accordance with that list (Wilson Decl. at 2-3). Moreover, plaintiff's Rule 56.1 Statement and his response to defendants' Rule 56.1 Statement were electronically filed as attachments to his declaration, but they do not appear in plaintiff's list of exhibits. Accordingly, I do not cite these documents as attachments to Wilson's declaration.

12

reported to the Office of Special Investigations (Compl. ¶ 49-(1)).

Plaintiff further alleges that in December 2007, Maria George, "an employee of a prospective employer, Primerica," called defendant Larraine Pavarini, an assistant principal at MS 135, to obtain information about plaintiff (Compl. ¶¶ 51-53). Plaintiff claims that Pavarini told George that plaintiff does not complete tasks in a timely manner, does not take directions well, does not get along with others, that he had a lawsuit against the DOE based on his denial of tenure, and that he was denied tenure at another school "and now he was coming after them" (Compl. ¶ 54). Plaintiff also alleges that Pavarini told George that "this was the second school he was going through the same thing[,]" that he created a "'lot of problems'" and that he had a lawyer and was scheduled to have a hearing with Pavarini's school in January 2008 (Compl. ¶ 55). Plaintiff also claims that Pavarini accused plaintiff of having her private life investigated and stated "'[i]f he was here I would wring his neck'" and it "took 'two years to fight this man'" and George could hire plaintiff at her own risk "'but God forbid if you do something he doesn't like . . .'" (Compl. ¶ 56). Plaintiff also states that Pavarini informed George of plaintiff's prior lawsuits and claimed that plaintiff won the appeal of his unsatisfactory

13

performance rating due to a "'technicality.'"  She also allegedly
called plaintiff an "'Odd Bird'" (Compl. ¶ 57).  Finally, plain-
tiff claims that Pavarini requested that George not inform
plaintiff of their conversation (Compl. ¶ 58).

Plaintiff notes that he filed a grievance concerning
this conversation with the EEOC and was given a right to sue
notice on November 14, 2008 (Compl. ¶ 59).

B.   Facts Defendants Claim
     Are Established by Discovery

In their statement pursuant to Local Civil Rule 56.1,
defendants contend that the following facts have been established
either through discovery or by affidavits submitted in connection
with the pending motion.  Unless otherwise noted, plaintiff does
not dispute these facts.[6]

Plaintiff self-identifies as "a black person of West
Indian descent."  He was a preparatory provisional teacher[7] at MS

---

[6]I do not separately outline the assertions of fact in
plaintiff's Rule 56.1 Statement because they are virtually
identical to those asserted in the Complaint and addressed in
Section II.A.  Many are asserted without any evidentiary support.
Moreover, any additional factual assertions in this document
involve allegedly unlawful conduct which, for reasons addressed
below, are not material to the present case.

[7]While defendants claim that plaintiff was an uncertified
preparatory provisional teacher, plaintiff claims that this
position was neither certified nor uncertified (Plaintiff's
(continued...)

14

113 from September 2000 through June 2003, and worked as a per

diem substitute teacher[8] from September through October 2003 at

CIS 22, and as a probationary teacher from September 2004 through

August 2005 at MS 135 (Defendants' Rule 56.1 Statement in Support

of Their Motion for Summary Judgment, dated January 24, 2011

(Docket Item 23), ("Def'ts' Rule 56.1 Statement") ¶ 2, _citing_

Compl. ¶¶ 5, 37, 44, 49(j)).  Plaintiff's employment was termi-

nated at MS 113 and MS 135 after he received an unsatisfactory

_____

[7](...continued)
Response to Defendants' Rule 56.1 Statement, dated Mar. 23, 2011
(Docket Item 29-2), ("Pl.'s 56.1 Response") ¶ 2, _citing_ United
Federation of Teachers Contract and DOE Position Statement,
attached to Wilson Decl. as Ex. 31).  To the extent this fact is
disputed, it is not material.

[8]Plaintiff claims that he was employed at CIS 22 as a full-
time employee but was paid at a per diem rate (Pl.'s 56.1
Response ¶ 2, _citing_ Wagner Stipulation, attached to Wilson Decl.
as Ex. 14; Class Schedule, attached to Wilson Decl. as Ex. 9).

performance evaluation[9] (Def'ts' Rule 56.1 Statement ¶ 3, _citing_ Compl. ¶¶ 31-32, 49(g,j)).

Plaintiff offers additional information concerning his unsatisfactory performance review in his Rule 56.1 Response, but does not explicitly contradict defendants' assertions.  Specifically, he adds that Barbara Morse, a literacy coach at MS 135, assessed plaintiff in a way that "sharply contrasted assessments by Gorman, Kshensky and Pavarini" (Pl.'s 56.1 Response ¶ 3, _citing_ Letter of Barbara Morse, attached to Wilson Decl. as Ex. 35; Deposition of Marcel Kshensky, attached to Wilson Decl. as Ex. 19).  Plaintiff also discusses Pavarini's Observation Report, which he claims he was first shown at his deposition.  He asserts that at that time the report did not contain a signature or handwritten comments, but when a copy of this document was

---

[9]Plaintiff claims that he received an unsatisfactory performance review because he refused to resign from his position at MS 135 and that this review was a form of retaliation (Pl.'s 56.1 Response ¶ 3, _citing_ Affidavit of LaShawn Jackson, attached to Wilson Decl. as Ex. 6; Affidavit of Roy Millington Lee, attached to Wilson Decl. as Ex. 6).  Plaintiff also adds that this review was overturned by the DOE (Pl.'s 56.1 Response ¶ 3, _citing_ Affidavit of George Lawson, attached to Wilson Decl. as Ex. 34; Memorandum of Virginia Caputo, attached to Wilson Decl. as Ex. 13).  Plaintiff also notes that the proper termination procedure was not followed in his case because plaintiff's lessons were not observed by the appropriate individuals and a report by Pavarini was improperly relied upon in giving plaintiff his unsatisfactory rating (Pl.'s 56.1 Response ¶ 3, _citing_ Deposition of Marcel Kshensky, attached to Wilson Decl. as Ex. 19).

provided to plaintiff and his union and used at the hearing
concerning his unsatisfactory review, it included handwritten
comments by Kshensky's secretary (Pl.'s 56.1 Response ¶ 3, <u>citing</u>
Deposition of George Lawson, attached to Wilson Decl. as Ex. 36,
at 45:1; 47:25; 48:1-25; Observation Report, attached to Wilson
Decl. as Ex. 37).

Plaintiff also notes that he was "never given extension
of probation" and that "Jeremah Senator credits were never taken
into consideration" while the probation of his white, non-West
Indian colleague was extended (Pl.'s 56.1 Response ¶ 3). Plain-
tiff further claims that the principal did not complete a portion
of plaintiff's Annual Professional Performance Form, and neither
he nor any officer from the superintendent's office signed the
form. Finally, plaintiff adds that he was terminated while on
sick leave in violation of the Family Medical Leave Act (Pl.'s
56.1 Response ¶ 3, <u>citing</u> Annual Professional Performance Review,
attached to Wilson Decl. as Ex. 30; Plaintiff's Accident Report,
attached to Wilson Decl. as Ex. 32).

Defendants assert that it is undisputed that after
plaintiff's termination from DOE employment in 2005, plaintiff
claimed he was the victim of discrimination based on his national
origin, that he had been subjected to a hostile environment, that
he was retaliated against and that his constitutional rights to

17

due process, equal protection of the laws and free speech had

been violated. Based on these allegations, he commenced an

action in this Court against the DOE, Cleveland Person, Leia

McKinley, Marlene Filewich, Frank Polietta, Olivia Lynch, Joel

Klein, Marcel Kshensky, Mary Gorman and Heidi Dien Ludwig pursu-

ant to Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et

seq., 42 U.S.C. §§ 1981 and 1983, the New York State Constitution

and the New York State and New York City Human Rights Laws

("Lawson I") (Def'ts' Rule 56.1 Statement ¶ 4, citing Amended

Complaint in Docket No. 05 Civ. 825, dated Sept. 29, 2005 and

attached to Declaration of Donna Canfield, dated Jan. 24, 2011

(Docket Item 24), ("Canfield Decl.") as Ex. B ("Am. Compl.");

2004 Charge of Discrimination, dated Jan. 29, 2004 and attached

to Canfield Decl. as Ex. C). Defendants in Lawson I moved for

summary judgment on August 31, 2010 (Def'ts' Rule 56.1 Statement

¶ 5, citing Docket Sheet in Docket No. 05 Civ. 825, attached to

Canfield Decl. as Ex. D). I recommended on February 25, 2011

that defendants' motion for summary judgment be granted (Docket

Item 60 in 05 Civ. 825). The Honorable Jed S. Rakoff, United

States District Court judge, adopted this Report and Recommenda-

tion on March 17, 2011 (Docket Item 64 in 05 Civ. 825). Plain-

tiff has appealed from the Order adopting the Report and Recom-

18

mendation, and his appeal is still pending (Docket Item 66 in 05
Civ. 825).

It is also undisputed that plaintiff now alleges that
two years after the termination of his probationary employment,
Pavarini, a former assistant principal at MS 135, retaliated
against plaintiff when she disparaged him and gave a negative
employment referral to George, a potential employer, on December
20, 2007 (Def'ts' Rule 56.1 Statement ¶¶ 6-7, citing Compl.
¶¶ 50-59; Pl.'s 56.1 Statement ¶ 17, citing Affidavit of Maria
George, dated Mar. 16, 2010 and attached to Wilson Decl. as Ex.
33 ("George Aff. I"); Affidavit of Maria George, dated Mar. 27,
2011 and attached to Wilson Decl. as Ex. 33 ("George Aff. II")).
Plaintiff alleges that George is an employee of Primerica, a
company which, among other things, provides financial advice to
families (Defendants' Supplemental Rule 56.1 Statement, dated
July 1, 2011 (Docket Item 26), ("Def'ts' Supplemental 56.1
Statement") ¶ 1 n.2, citing Compl. ¶¶ 50-56). During her deposi-
tion, George testified, and Primerica confirmed by letter, that
she is not an employee of Primerica, but "an independent contrac-
tor sales representative with Primerica Financial Services"
(Def'ts' Supplemental 56.1 Statement ¶ 2, citing Letter of Marla
Newsom, dated May 24, 2011 and attached to Supplemental Declara-
tion of Donna Canfield, dated July 1, 2011 (Docket Item 27),

("Supplemental Canfield Decl.") as Ex. I ("Newsom Letter"), at 1;
Deposition of Maria George, attached to Supplemental Canfield
Decl. as Ex. J ("George Dep."), at 19:11-20:21).

George "joined" Primerica after meeting a recruiter at
her college campus and completing an "independent business
application" ("IBA") which Primerica processed and approved,
subject to a background check (Def'ts' Supplemental 56.1 State-
ment ¶ 3, citing George Dep. at 35:8-25; 39:10-17; 40:21-41:22;
43:19-44:22). George testified that she then "recruited" people
in the sense that she spoke to others about how they and their
families could save money. As an independent contractor, she was
paid solely through commissions for the sale of Primerica prod-
ucts such as mortgages, life insurance, prepaid legal services
and loans, among other things (Def'ts' Supplemental 56.1 State-
ment ¶ 4, citing George Dep. at 26:9-16; 48:3-24; Newsom Letter
at 1). George testified that she recruited potential independent
contractors as well, which entitled her to "overrides," or a
percentage of the commission on any transactions closed by those
individuals (Def'ts' Supplemental 56.1 Statement ¶ 5, citing
George Dep. at 71:19-72:7; 117:12-22; 145:11-20).

George met plaintiff while recruiting in the subway.
She obtained plaintiff's name and telephone number and invited
him to meet with her and talk about Primerica the following day

20

(Def'ts' Supplemental 56.1 Statement ¶ 6, <u>citing</u> George Dep. at
74:25-75:1; 77:9-78:5).  She testified that she found plaintiff
likeable and invited him to complete an IBA, which he did.  As an
independent contractor, plaintiff would have been considered an
independent business owner and would not have been guaranteed a
either an hourly wage or a salary (Def'ts' Supplemental 56.1
Statement ¶¶ 7-9, <u>citing</u> George Dep. at 80:11-16; 82:5-14; 148:2-
5).

Before George submitted plaintiff's IBA to Primerica,
she asked plaintiff for the name of someone who knew him person-
ally so that she could verify his information.  She did not ask
plaintiff for a list of prior employers.  Plaintiff then provided
a list of people who could serve as both "potential clients" and
"potential recruits" (Def'ts' Supplemental 56.1 Statement ¶¶ 9-
10, <u>citing</u> George Dep. at 82:16-18; 92:13-15; 96:7-12).  George
testified that Primerica does not require or suggest that re-
cruiters conduct background or reference checks of independent
contractors before submitting their IBA (Def'ts' Supplemental
56.1 Statement ¶ 11, <u>citing</u> George Dep. at 93:5-9).  George also
stated that she spoke to Pavarini regarding plaintiff in late
December 2007 and that Pavarini gave plaintiff a negative refer-
ence.  George states that because of Pavarini's negative com-
ments, George "'did not give [plaintiff] the position'" (Def'ts'

21

Supplemental 56.1 Statement ¶¶ 12, 14, <u>citing</u> George Aff. I ¶ 22; George Aff. II ¶ 3; George Dep. 107:7-12).  George stated that her conversation with Pavarini was tape recorded for "'training purposes'" though Primerica does not endorse independent contractors' tape recording calls for this purpose (Def'ts' Supplemental 56.1 Statement ¶ 13, <u>citing</u> George Aff. II ¶ 9; George Dep. at 99:4-101:10; 104:16-25).  George also noted that she did not submit plaintiff's IBA to Primerica because she did not think she would earn money through his recruitment.  She admitted that Primerica would have processed plaintiff's IBA had she submitted it, but stated that "'he would just become a number and it's not something I wanted'" (Def'ts' Supplemental 56.1 Statement ¶¶ 15, 16, <u>citing</u> George Dep. at 112:3-12; 116:12-117:25; 150:4-8).  George also testified that she did not possess the authority to hire plaintiff as an independent contractor and that Primerica would have made that decision after they processed his IBA (Def'ts' Supplemental 56.1 Statement ¶ 17, <u>citing</u> George Dep. at 155:21-24).

George stated that she had recruited more than five hundred individuals as independent contractors, but only four or five of those individuals actually worked in that capacity (Def'ts' Supplemental 56.1 Statement ¶ 18, <u>citing</u> George Dep. at 145:3-10; 149:13-23).  George herself worked as an independent

22

contractor sales representative with Primerica from July 8, 2005 until March 22, 2008. During that period, she earned a total of $582.82 from Primerica, including commissions and "overrides" (Def'ts' Supplemental 56.1 Statement ¶ 19, <u>citing</u> George Dep. at 22:1-23:15; Newsom Letter at 1).

After learning of the conversation between Pavarini and George, plaintiff filed another charge of discrimination with the EEOC alleging retaliation by Pavarini and claiming that, in her telephone conversation with a George on December 20, 2007,[10] Pavarini recommended that George not hire plaintiff (Def'ts' Rule 56.1 Statement ¶ 8, <u>citing</u> EEOC Charge of Discrimination, dated Oct. 23, 2008 and attached to Canfield Decl. as Ex. E). Plain-tiff served a Notice of Claim on the Office of Corporation Counsel of the City of New York containing these same claims on March 17, 2008 (Def'ts' Rule 56.1 Statement ¶ 9, <u>citing</u> Notice of Claim, dated Mar. 17, 2008 and attached to Canfield Decl. as Ex.

---

[10]Plaintiff states that he "does dispute paragraph 8 of Defendants' Rule 56.1 statement asserting that there was a telephone conversation with a potential employer during late December 2007, not on December 20, 2007" (Pl.'s 56.1 Response ¶ 8, <u>citing</u> George Aff. I; George Aff. II). I do not find that defendants' assertion that the conversation between George and Pavarini occurred on December 20, 2007 and plaintiff's concession that it occurred in late December are contradictory. Moreover, plaintiff stated in his own Rule 56.1 Statement that this conversation occurred on or about December 20, 2007 (Pl.'s 56.1 Statement ¶ 17).

F).  The EEOC mailed plaintiff a right to sue notice on November

13, 2008 and plaintiff commenced the present action on February

13, 2009 (Def'ts' Rule 56.1 Statement ¶¶ 10-11, <u>citing</u> Dismissal

and Notice of Rights, dated Nov. 13, 2008 and attached to Can-

field Decl. as Ex. G; Docket Sheet, attached to Canfield Decl. as

Ex. H).

III.  <u>Analysis</u>

     A.  Summary Judgement
        <u>Standards</u>

     The standards applicable to a motion for summary

judgment are well-settled and require only brief review.

> Summary judgment shall be granted when there is no
> genuine issue of material fact and the moving party is
> entitled to judgment as a matter of law.  Fed.R.Civ.P.
> 56(c).  This form of relief is appropriate when, after
> discovery, the party -- here plaintiff -- against whom
> summary judgment is sought, has not shown that evidence
> of an essential element of her case -- one on which she
> has the burden of proof -- exists.  <u>See</u> <u>Celotex Corp.</u>
> <u>v. Catrett</u>, 477 U.S. 317, 323, 106 S.Ct. 2548, 91
> L.Ed.2d 265 (1986).  This form of remedy is inappropri-
> ate when the issue to be resolved is both genuine and
> related to a disputed material fact.  An alleged fac-
> tual dispute regarding immaterial or minor facts be-
> tween the parties will not defeat an otherwise properly
> supported motion for summary judgment.  <u>See</u> <u>Howard v.</u>
> <u>Gleason Corp.</u>, 901 F.2d 1154, 1159 (2d Cir. 1990).
> Moreover, the existence of a mere scintilla of evidence
> in support of nonmovant's position is insufficient to
> defeat the motion; there must be evidence on which a
> jury could reasonably find for the nonmovant.  <u>Anderson</u>

24

> v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct.
> 2505, 91 L.Ed.2d 202 (1986).
>
> If the movant demonstrates an absence of a genuine
> issue of material fact, a limited burden of production
> shifts to the nonmovant, who must "demonstrate more
> than some metaphysical doubt as to the material facts,"
> and come forward with "specific facts showing that
> there is a genuine issue for trial." Aslanidis v.
> United States Lines, Inc., 7 F.3d 1067, 1072 (2d Cir.
> 1993). If the nonmovant fails to meet this burden,
> summary judgment will be granted against it. Gallo v.
> Prudential Residential Servs., 22 F.3d 1219, 1224 (2d
> Cir. 1994).

Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 84 (2d Cir.

2004); accord Jeffreys v. City of New York, 426 F.3d 549, 553-54

(2d Cir. 2005); Gallo v. Prudential Residential Servs., Ltd.

P'ship, 22 F.3d 1219, 1223-24 (2d Cir. 1994).

"Material facts are those which 'might affect the

outcome of the suit under the governing law,' and a dispute is

'genuine' if 'the evidence is such that a reasonable jury could

return a verdict for the nonmoving party.'" Coppola v. Bear

Stearns & Co., Inc., 499 F.3d 144, 148 (2d Cir. 2007), quoting

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); accord

McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir.

2007). "'[I]n ruling on a motion for summary judgment, a judge

must ask himself not whether he thinks the evidence unmistakably

favors one side or the other but whether a fair-minded jury could

return a verdict for the [non-movant] on the evidence pre-

sented[.]'"  <u>Cine SK8, Inc. v. Town of Henrietta</u>, 507 F.3d 778,

788 (2d Cir. 2007), <u>quoting</u> <u>Readco, Inc. v. Marine Midland Bank</u>,

81 F.3d 295, 298 (2d Cir. 1996).

> The party seeking summary judgment has the burden to
> demonstrate that no genuine issue of material fact
> exists . . . .   In determining whether a genuine issue
> of material fact exists, a court must examine the
> evidence in the light most favorable to, and draw all
> inferences in favor of, the non-movant . . . .   Stated
> more succinctly, "[t]he evidence of the non-movant is
> to be believed."

<u>Lucente v. Int'l Bus. Machs. Corp.</u>, 310 F.3d 243, 253-54 (2d Cir.

2002) (citations omitted).  <u>See</u> <u>also</u> <u>Jeffreys v. City of New</u>

<u>York</u>, <u>supra</u>, 426 F.3d at 553 ("Assessments of credibility and

choices between conflicting versions of the events are matters

for the jury, not for the court on summary judgment."), <u>quoting</u>

<u>Rule v. Brine, Inc.</u>, 85 F.3d 1002, 1011 (2d Cir. 1996); <u>accord</u>

<u>Make the Road by Walking, Inc. v. Turner</u>, 378 F.3d 133, 142 (2d

Cir. 2004); <u>Dallas Aerospace, Inc. v. CIS Air Corp.</u>, 352 F.3d

775, 780 (2d Cir. 2003).

"In moving for summary judgment against a party who

will bear the ultimate burden of proof at trial, the movant may

satisfy [its] burden by pointing to an absence of evidence to

support an essential element of the nonmoving party's claim."

<u>Vann v. City of New York</u>, 72 F.3d 1040, 1048 (2d Cir. 1995).  "A

defendant moving for summary judgment must prevail if the plain-

tiff fails to come forward with enough evidence to create a genuine factual issue to be tried with respect to an element essential to its case." Allen v. Cuomo, 100 F.3d 253, 258 (2d Cir. 1996).

The Court of Appeals for the Second Circuit has explained that "in determining whether the moving party has met [its] burden of showing the absence of a genuine issue for trial, the district court may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 statement.  It must be satisfied that the citation to evidence in the record supports the assertion." Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004); see also Giannullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003).

Summary judgment is "ordinarily inappropriate" in employment discrimination cases where the employer's intent and state of mind are in dispute.  Carlton v. Mystic Transp., Inc., 202 F.3d 129, 134 (2d Cir. 2000); Cifarelli v. Vill. of Babylon, 93 F.3d 47, 54 (2d Cir. 1996); see Gallo v. Prudential Residential Servs., Ltd. P'ship, supra, 22 F.3d at 1224; Montana v. First Fed. Sav. & Loan Ass'n, 869 F.2d 100, 103 (2d Cir. 1989); Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985).  Moreover, in discrimination cases

27

> summary judgment may not be granted simply because the
> court believes that the plaintiff will be unable to
> meet his or her burden of persuasion at trial . . . .
> There must either be a lack of evidence in support of
> the plaintiff's position, . . . or the evidence must be
> so overwhelmingly tilted in one direction that any
> contrary finding would constitute clear error.

Danzer v. Norden Sys., Inc., 151 F.3d 50, 54 (2d Cir. 1998)

(footnote and citations omitted).  See Weber v. Parfums Givenchy,

Inc., 49 F. Supp. 2d 343, 354 (S.D.N.Y. 1999) (Wood, D.J.).

Although the central role of intent requires that

caution be exercised in addressing a summary judgment motion made

in a discrimination case, "'the salutary purposes of summary

judgment -- avoiding protracted, expensive and harassing trials

-- apply no less to discrimination cases than to . . . other

areas of litigation.'"  Abdu-Brisson v. Delta Air Lines, Inc.,

239 F.3d 456, 466 (2d Cir. 2001), quoting Meiri v. Dacon, supra,

759 F.2d at 998.  Thus, the Court of Appeals for the Second

Circuit has expressly "remind[ed the] district courts that the

'impression that summary judgment is unavailable to defendants in

discrimination cases is unsupportable.'"  Weinstock v. Columbia

Univ., 224 F.3d 33, 41 (2d Cir. 2000), quoting McLee v. Chrysler

Corp., 38 F.3d 67, 68 (2d Cir. 1994).

Finally, even when a summary judgment motion is unop-

posed, the Court must examine the record to determine whether a

genuine issue of fact exists for trial; a summary judgment motion

cannot be granted on default.  <u>Vt. Teddy Bear Co. v. 1-800</u>

<u>Beargram Co.</u>, <u>supra</u>, 373 F.3d at 244.

B.  <u>Plaintiff's Duplicative Claims</u>

The Complaint asserts a total of sixteen claims:  (1)
harassment, a hostile work environment and unequal terms and
conditions of employment in violation of Title VII (Compl. ¶ 60);
(2) wrongful termination in violation of Title VII (Compl. ¶ 61);
(3) harassment, a hostile work environment and unequal terms and
conditions of employment in violation of the New York State
Executive Law (Compl. ¶ 62); (4) wrongful termination in viola-
tion of the New York State Executive Law (Compl. ¶ 63); (5)
harassment, a hostile work environment and unequal terms and
conditions of employment in violation of the New York City
Administrative Code (Compl. ¶ 64); (6) wrongful termination in
violation of the New York City Administrative Code (Compl. ¶ 65);
(7) discrimination on the basis of ancestry in violation of 42
U.S.C. § 1981 (Compl. ¶ 66); (8) a violation of plaintiff's First
Amendment rights, pursuant to 42 U.S.C. § 1983 (Compl. ¶ 68); (9)
a violation of plaintiff's right to equal protection of the law,
pursuant to 42 U.S.C. § 1983 (Compl. ¶ 70); (10) a violation of
plaintiff's right to due process of law, pursuant to 42 U.S.C.
§ 1983 (Compl. ¶ 72); (11) a violation of plaintiff's First

29

Amendment rights, pursuant to the New York State constitution
(Compl. ¶ 74); (12) a violation of plaintiff's right to equal
protection of the law, pursuant to the New York State constitu-
tion (Compl. ¶ 76); (13) a violation of plaintiff's right to due
process of law, pursuant to the New York State constitution
(Compl. ¶ 78); (14) retaliation in violation of 42 U.S.C. § 1981
(Compl. ¶ 81); (15) retaliation in violation of the New York
State Executive Law (Compl. ¶ 85); (16) retaliation in violation
of the New York City Administrative Code (Compl. ¶ 89).

      Defendants argue that plaintiff's first thirteen claims
are duplicative of those plaintiff asserted in Lawson I and
should therefore be dismissed (Def'ts' Mem. in Supp. at 3).
Defendants note that "'[a]s part of its general power to adminis-
ter its docket, a district court may stay or dismiss a suit that
is duplicative of another federal court suit'" (Def'ts' Mem. in
Supp. at 2-3, quoting Curtis v. Citibank, N.A., 226 F.3d 133, 138
(2d Cir. 2000)). See also Colorado River Water Conservation
Dist. v. United States, 424 U.S. 800, 817 (1976); Adam v. Jacobs,
950 F.2d 89, 92 (2d Cir. 1991); Walton v. Eaton Corp., 563 F.2d
66, 70 (3d Cir. 1977). "The complex problems that can arise from
multiple federal filings do not lend themselves to a rigid test,
but require instead that the district court consider the equities
of the situation when exercising its discretion." Curtis v.

Citibank, N.A., supra, 226 F.3d at 138, citing Colorado River

Water Conservation Dist. v. United States, supra, 424 U.S. at

817.

Defendants also argue that plaintiff has abandoned

these claims because plaintiff's opposition papers do not address

defendants' arguments that these claims should be dismissed as

duplicative (Defendants' Memorandum of Law in Further Support,

dated Jul. 1, 2011 (Docket Item 28), ("Def'ts' Mem. in Further

Supp.") at 1, citing Taylor v. City of New York, 269 F. Supp. 2d

68, 75 (E.D.N.Y. 2003)).  Indeed, plaintiff's opposition papers

appear to solely address his fourteenth through sixteenth claims

that defendants retaliated against him in violation of Section

1981, the New York Executive Law and the New York City Adminis-

trative Code when Pavarini allegedly disparaged plaintiff.[11]

However, as noted above, a summary judgment motion cannot be

granted on default, and, therefore, plaintiff's failure to

respond to certain arguments is of no moment if defendants have

---

[11]In his statement of facts, plaintiff refers to "background
and other facts that led to this action, including the action
brought in 2005 by plaintiff against the DOE" (Pl.'s Mem. in Opp.
at 3-4).  However, other than a footnote describing issues
plaintiff had with several non-parties, plaintiff only discusses
the conversation between Pavarini and George.  Likewise, in the
Argument section, he notes only that there are disputed issues of
material fact concerning his Section 1981 and "State and City
Human Rights Laws" claims (Pl.'s Mem. in Opp. at 4-7).

not independently shown they are entitled to judgment as a matter of law.

　　　　While these first thirteen claims and plaintiff's factual allegations in support of them are virtually identical to those asserted in Lawson I, they are only duplicative with respect to Klein and the DOE (Compl. ¶¶ 1, 3-4, 8-49(a-l), 50-59, 60-82, 84-86, 88-90; see Am. Compl. ¶¶ 1, 3-5, 7-49(a-l), 52-80). Pavarini was not a defendant in Lawson I, therefore claims against her in this action cannot be considered duplicative. Although the doctrine of res judicata may prevent plaintiff from asserting against Pavarini the same claims that were dismissed in Lawson I, Parklane Hosiery Co. v. Shore, 439 U.S. 322, 330-32 (1979), defendants do not assert this argument. I decline to raise this argument sua sponte because doing so would deprive plaintiff of his right to be heard on the issue. Defendants have not addressed the fact that Pavarini was not a defendant in Lawson I. Accordingly, I respectfully recommend that summary judgment be granted with respect to plaintiff's first thirteen claims against Klein and the DOE because they are duplicative of those asserted in Lawson I, but recommend that it be denied as to

32

these claims with respect to Pavarini on the theory that the claims are duplicative.[12]

Plaintiff's fourteenth through sixteenth claims of retaliation pursuant to Section 1981, New York Executive Law and the New York City Administrative Code are not duplicative of plaintiff's claims in Lawson I because plaintiff now adds that Pavarini's alleged conversation with George serves as a basis for those claims as well (Compl. ¶¶ 83, 87, 91). However, to the extent plaintiff bases these claims on the factual allegations asserted in Lawson I, those claims should be dismissed as duplicative with respect to Klein and the DOE.

> C.  Defendants' Argument
>      that Plaintiff's
>      <u>Title VII Claims Are Untimely</u>

Defendants also argue that plaintiff's Title VII claims should be dismissed because Title VII mandates that plaintiff "may seek redress only for claims of discriminatory and/or retaliatory conduct that have accrued within 300 days of the date plaintiff filed his charge with the [EEOC] only" (Def'ts' Mem. in

---

[12]Defendants also claim generally that "many, if not all, of plaintiff's duplicative claims are barred by the applicable statute of limitations" (Def'ts' Mem. in Supp. at 3 n.1). However, they do not explain which claims are time-barred and do not identify what statutes of limitations are applicable.

Supp. at 3, _citing_ 42 U.S.C. § 2000e-5(e)(1); _Nat'l R.R. Passen-_
_ger Corp. V. Morgan_, 536 U.S. 101, 109-10 (2002); _Zerilli-Edelgl-_
_ass v. New York City Transit Auth._, 333 F.3d 74, 79-81 (2d Cir.
2003); _Tewksbury v. Ottaway Newspapers_, 192 F.3d 322, 325 (2d
Cir. 1999)).  They argue that because plaintiff filed his charge
with the EEOC on October 23, 2008, any Title VII claim based on
unlawful discriminatory or retaliatory acts that occurred before
December 28, 2007 should be dismissed.  As noted in Section
III.B., I have already recommended that plaintiff's Title VII
claims be dismissed as to Klein and the DOE because they are
duplicative of the claims asserted in Lawson I, but the Title VII
claims against Pavarini remain.

     Specifically, defendants argue that plaintiff cannot
assert Title VII claims based on the alleged conversation between
George and Pavarini because it occurred on December 20, 2007,
more than three hundred days before plaintiff filed his EEOC
charge (Def'ts' Mem. in Supp. at 3-4).  Plaintiff has not re-
sponded to this argument in his Memorandum of Law in Oppo-
sition,[13] but states in his Rule 56.1 Response that this conver

_____

     [13]Plaintiff does not argue that his claim of retaliation is
"reasonably related" to the charge he filed with the EEOC on
August 11, 2004 (Am. Compl. ¶ 39).  _See generally_ _Shah v. New_
_York State Dep't of Civil Serv._, 168 F.3d 610, 613-14 (2d Cir.
1999).  Therefore, I express no opinion as to whether such a
                                        (continued...)

sation occurred in "late December 2007, not on December 20, 2007"
(Pl.'s Rule 56.1 Response ¶ 8).  However, in his 2008 EEOC
charge, plaintiff indicated that the retaliatory act of discrimi-
nation at issue occurred on December 20, 2007 and did not claim
that it was a continuing action (2008 Charge of Discrimination,
dated Oct. 23, 2008 and attached to Canfield Decl. as Ex. E, at
1).  Likewise, in his Affidavit of Particulars and his Rule 56.1
Statement, plaintiff stated that the conversation between Pavari-
ni and George occurred on December 20, 2007 (Charge of Discrimi-
nation at 8; Pl.'s 56.1 Statement ¶ 17).  In light of plaintiff's
multiple admissions that the conversation between Pavarini and
George occurred on December 20, 2007, I find that there is no
genuine issue of material fact concerning the date of this
conversation.  Because it occurred outside of the statutory time
period for Title VII claims, I respectfully recommend that
plaintiff's Title VII claims against all defendants be dismissed
on the ground that they are untimely.  Accordingly, I do not
address defendants' alternative arguments that plaintiff cannot
establish a <u>prima</u> <u>facie</u> case of retaliation pursuant to Title

---

[13](...continued)
claim would be considered timely on the theory it was related to
a previously filed EEOC charge.

VII, and that individuals cannot be held personally liable for claims under Title VII (Def'ts' Mem. in Supp. at 4-5, 8).

D.   Plaintiff's Section 1981 Claims[14]

Defendants have limited their arguments for summary judgment with respect to plaintiff's Section 1981 claims to those concerning Pavarini's alleged acts of retaliation.   Besides their general argument that this claim is duplicative of that in Lawson I, defendants do not address plaintiff's claim that Pavarini violated Section 1981 by discriminating against plaintiff on the basis of his ancestry (Compl. ¶ 66).   Accordingly, I respectfully recommend that summary judgment with respect to plaintiff's 1981 discrimination claim be denied.

---

[14]Although it is a technical point, I note that to the extent plaintiff "seeks to vindicate any independent rights under 42 U.S.C. § 1981, he must do so via claims under § 1983." Whaley v. City Univ. of New York, 555 F. Supp. 2d 381, 400 (S.D.N.Y. 2008) (McMahon, D.J.), citing Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 735 (1989) (collecting cases within the Second Circuit reaching the same conclusion).   Discrimination cases brought under Section 1983 are governed by the same standards applicable to Title VII discrimination claims.   Back v. Hastings on Hudson Union Free Sch. Dist., 365 F.3d 107, 122-23 (2d Cir. 2004).

    1.  Defendants' Claim that Plaintiff
        Cannot Establish a <u>Prima</u> <u>Facie</u> Case
        <u>of Retaliation Pursuant to Section 1981</u>

To establish a <u>prima</u> <u>facie</u> case of retaliation under Section 1981, a plaintiff must demonstrate that:  (1) he engaged in protected activity; (2) the employer was aware of this activity; (3) the employer took adverse action against him and (4) a causal connection exists between the protected activity and the adverse action, <u>i.e.</u>, that a retaliatory motive played a part in the adverse employment action.  <u>Sista v. CDC Ixis N. Am., Inc.</u>, 445 F.3d 161, 177 (2d Cir. 2006); <u>Constance v. Pepsi Bottling Co.</u> <u>of New York</u>, 03-CV-5009 (CBA)(MDG), 2007 WL 2460688 at *34 (E.D.N.Y. Aug. 24, 2007).  "[I]t is well-settled that a negative employment reference given to a potential employer seeking to hire the defendant employer's former employee qualifies as an adverse employment action."  <u>Noni v. County of Chautauqua</u>, 511 F. Supp. 2d 355, 364 (W.D.N.Y. 2007) (citing cases).

A plaintiff may establish the requisite causal connection between the protected activity and the retaliatory conduct "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or . . . (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant."  <u>Gordon v. New York City Bd. of</u>

Educ., 232 F.3d 111, 117 (2d Cir. 2000); White v. Whitman, 99

Civ. 4777 (FM), 2002 WL 776589 at *10 (S.D.N.Y. Apr. 26, 2002)

(Maas, M.J.).

Once plaintiff demonstrates a prima facie case, the

burden shifts to defendant to articulate legitimate, non-retalia-

tory reasons for its actions.  Once the defendant does so, the

burden shifts back to plaintiff to show that the articulated

reasons are pretextual.  Papelino v. Albany Coll. of Pharmacy of

Union Univ., No. 09-4248-cv, 2011 WL 199124 at *8 (2d Cir. Jan.

24, 2011).  Although temporal proximity can be sufficient to

support an inference of causation at the prima facie stage, by

itself, it is insufficient to sustain plaintiff's burden at the

third step.  El Sayed v. Hilton Hotels Corp., 627 F.3d 931, 933

(2d Cir. 2010) (per curiam) ("The temporal proximity of events

may give rise to an inference of retaliation for the purposes of

establishing a prima facie case of retaliation under Title VII,

but without more, such temporal proximity is insufficient to

satisfy appellant's burden to bring forward some evidence of

pretext . . . .  Indeed, a plaintiff must come forward with some

evidence of pretext in order to raise a triable issue of fact.").

Defendants first argue that plaintiff cannot establish

a prima facie case of retaliation because he cannot show that he

engaged in a protected activity.  They argue that plaintiff's

38

allegedly protected activity consisted of his complaints of
discrimination and retaliation based not on his race, but on his
West Indian descent, which is not protected by Section 1981
(Def'ts' Mem. in Supp. at 6). Assuming, without deciding, that
Section 1981 does not protect against discrimination based on
national origin, defendants are incorrect that plaintiff has only
asserted this type of discrimination. Plaintiff's 2008 Charge of
Discrimination asserts that he was discriminated against based on
his "race[,]" "color" and "national origin" (2008 Charge of
Discrimination at 1). In his opposition papers, plaintiff notes
that his 2008 Affidavit of Particulars and his complaint in
Lawson I also contain allegations of racial discrimination, and
that defendants retaliated against him after he complained of
discrimination based on race and national origin to the EEOC and
Office of Educational Opportunity (Pl.'s Mem. in Opp. at 5).
Therefore, defendants' claim that plaintiff cannot establish that
he engaged in protected activity because he did not allege racial
discrimination fails.[15]

---

[15]Defendants do not contend that they were unaware of
plaintiff's protected activity. They also do not address whether
plaintiff's allegedly protected activity is sufficiently close in
time to defendants' allegedly adverse actions to support an
inference of retaliation.

Defendants also argue that plaintiff cannot establish a

prima facie case of retaliation pursuant to Section 1981 because

"there is simply no evidence in the record, beyond plaintiff's

hearsay assertions that defendant Pavarini gave a negative

employment reference, that he suffered an adverse employment

action, or that a causal connection exists between plaintiff's

protected activity and the alleged materially adverse action"

(Def'ts' Mem. in Supp. at 7; Def'ts' Mem. in Further Supp. at 2).

After plaintiff submitted affidavits[16] from George with his

---

[16]Defendants claim that "the Court should disregard the
factual issues created by George's affidavits as issues not
'genuine' for trial" and instead should "only consider Maria
George's deposition testimony, because 'a deposition of a
witness, subject to cross-examination, is generally more reliable
than an affidavit to oppose a summary judgment motion'" (Def'ts'
Mem. in Further Supp. at 2-3 n.1, citing Perma Research & Dev.
Co. v. Singer Co., 410 F.2d 572, 578 (2d Cir. 1969)). Defendants
omit the next sentence of that quotation, which states
"[n]evertheless, if a witness has made an affidavit and his
deposition has also been taken, and the two in some way conflict,
the court may not exclude the affidavit from consideration in the
determination of the question whether there is any genuine issue
as to any material fact." Perma Research & Dev. Co. v. Singer
Co., supra, 410 at 572 (internal citation and quotation omitted).
Although "a litigant cannot defeat summary judgment by advancing
'factual allegations . . . for the first time in the plaintiff's
affidavit opposing summary judgment [where] the affidavit
contradicts her own prior deposition testimony,'" Marasligiller
v. City of New York, 217 F. App'x 55, 58 (2d Cir. 2007), quoting
Brown v. Henderson, 257 F.3d 246, 252 (2d Cir. 2001), defendants
do not point to any inconsistencies between George's affidavit
and her deposition testimony. See also In re Fischer, No. 01-CV-
2717, 2001 WL 1923359 at *5 (E.D.N.Y. Aug. 21, 2001).

opposition papers and defendants deposed her, defendants argued that plaintiff still could not establish a prima facie case of retaliation because plaintiff had not demonstrated the requisite causal connections between defendants' allegedly negative employment references and plaintiff's inability to secure employment (Def'ts' Mem. in Further Supp. at 2).

Specifically, defendants assert that plaintiff "cannot establish that but for Pavarini's alleged negative employment reference, plaintiff would have received a position at Primerica" because, as an independent contractor, George did not have the authority to hire plaintiff directly (Def'ts' Mem. in Further Supp. at 2-3, citing Newsom Letter at 1; George Dep. at 19:11-20:21; 155:21-24). Defendants also note that there is no evidence that George was employed by Primerica, or any other employer, to solicit individuals to fill jobs within Primerica or any other company (Def'ts' Mem. in Further Supp. at 3). Defendants argue that plaintiff cannot, therefore, "rely on the affidavits of George to establish that George and/or Primerica was an actual potential employer of plaintiff or a job placement agent for Primerica" (Def'ts' Mem. in Further Supp. at 3, citing Noni v. County of Chautauqua, supra, 511 F. Supp. 2d at 364 and Thomas v. iStar Fin. Inc., 448 F. Supp. 2d 532, 536 (S.D.N.Y. 2006) (Marrero, D.J.)).

41

Defendants' argument is not persuasive.  Defendants'
reliance on <u>Noni v. County of Chautauqua</u>, <u>supra</u>, 511 F. Supp. 2d
at 364-65, is misplaced because defendants in that case had not
given a negative reference to any actual potential employers, but
to friends of plaintiff posing as such.  Unlike the present case,
there was no evidence in <u>Noni</u> that any employers ever actually
considered plaintiff for employment.  Defendants also incorrectly
rely on <u>Thomas v. iStar Fin. Inc.</u>, <u>supra</u>, 448 F. Supp. 2d at 536.
In that case the vice president of the defendant employer had
made negative statements about the plaintiff to her husband, the
owner of a recruiting firm.  Because she did not make these
statements in response to, or in anticipation of, a request for a
reference, the court found that these statements could not be
considered a "reference" at all.  This situation is not analogous
to the present case in which plaintiff alleges that Pavarini gave
a negative reference directly to the individual responsible for
submitting plaintiff's employment application.  These distin-
guishable cases do not support defendants' argument that there is
no causal connection between Pavarini's statements to George and
her decision not to submit plaintiff's application.

The fact that George lacked independent authority to
hire plaintiff is immaterial.  Defendants have cited to no legal
authority for their argument that a negative employment reference

42

can only be considered retaliatory if it is made to the individ-
ual with ultimate hiring authority.  George was an intermediary
between plaintiff and Primerica and, viewing the evidence in the
light most favorable to plaintiff, her decision not to submit
plaintiff's IBA based on Pavarini's comments effectively termi-
nated plaintiff's efforts to gain employment with Primerica.

> 2.  Defendants' Argument that
>     George's Affidavit
>     <u>Constitutes Inadmissible Evidence</u>

Defendants also argue that George's affidavits contain
hearsay and therefore "do not constitute admissible evidence as
required to defeat summary judgment" (Def'ts' Mem. in Further
Supp. at 4, <u>citing</u> <u>Patterson v. Co. of Oneida, New York</u>, 375 F.3d
206, 219 (2d Cir. 2004), <u>superceded in part on other grounds by
Civil Rights Act of 1991</u>; <u>Sarno v. Doublas Elliman-Gibbons &
Ives, Inc.</u>, 183 F.3d 155, 160 (2d Cir. 1999)).  "Affidavits
submitted in support of or in opposition to the summary judgment
motion must 'be made on personal knowledge, shall set forth such
facts as would be admissible in evidence, and shall show affirma-
tively that the affiant is competent to testify to the matters
stated therein.'"  <u>Patterson v. Co. of Oneida, New York</u>, <u>supra</u>,
375 F.3d at 219, <u>quoting</u> Fed.R.Civ.P. 56(e).  "[A]n affidavit's
hearsay assertion that would not be admissible at trial if

43

testified to by the affiant is insufficient to create a genuine issue for trial." <u>Patterson v. Co. of Oneida, New York</u>, <u>supra</u>, 375 F.3d at 219, <u>quoting</u> Fed.R.Civ.P. 56(e).

Defendants argue that George's affidavits contain statements of Pavarini which are offered for the truth of the matter asserted, and, therefore, constitute inadmissible hearsay (Def's Mem. in Further Supp. at 4, <u>citing</u> Fed.R.Evid. 801(c)). Defendants' argument is meritless. First, plaintiff is not submitting evidence of Pavarini's statements to prove the truth of the matter asserted therein -- plaintiff, no doubt, disagrees with Pavarini's alleged comments -- but to prove that Pavarini made negative statements about plaintiff to a prospective employer, which negatively impacted his ability to obtain employment. In contrast, the court in <u>Sarno v. Doublas Elliman-Gibbons & Ives, Inc.</u>, <u>supra</u>, 183 F.3d at 160, which defendants cite, ruled that an affidavit from plaintiff which stated that "he 'was told'" by a prospective employer that the defendant employer would not provide a positive reference constituted inadmissible hearsay. The court in that case explicitly ruled that because the plaintiff "presented no sworn statement from [the prospective employer], he failed to adduce any evidence sufficient to create a genuine issue to be tried as to his contention that [defendant employer's] neutral communication to [the prospective employer]

44

caused [the prospective employer] not to hire him and hence was an adverse employment action." _Sarno v. Doublas Elliman-Gibbons & Ives, Inc._, _supra_, 183 F.3d at 160.  George has provided the precise type of affidavit the _Sarno_ Court found was lacking. Accordingly, I find that George's affidavit does not constitute inadmissible hearsay.

Moreover, I find that George's affidavits and deposition testimony create a genuine issue of material fact with respect to the allegedly retaliatory statements made by Pavarini to George.[17]  Therefore, I respectfully recommend that summary judgment dismissing plaintiff's Section 1981 retaliation claim be denied.

---

[17]Defendants also argue that summary judgment should be granted with respect to any claims that plaintiff lost other employment opportunities due to defendants' negative reference (Def'ts' Mem. in Further Supp. at 4).  However, while plaintiff asserts that defendants disparaged plaintiff to "at least one prospective employer, and possibly more" it does not appear that plaintiff has actually claimed he was denied any other employment opportunity due to a such a reference.  Accordingly, I need not decide whether summary judgment should be granted with respect to such claims.

3.  Defendants' Argument that Plaintiff's
    Section 1981 Claim Against Klein and
    the DOE Should be Dismissed

Defendants argue that the DOE is a municipal entity and, as such, it is not liable under Section 1981 for the unconstitutional acts of its employees unless plaintiff pleads and proves, in addition to a violation of his constitutional rights, that the alleged actions by the employees were a result of an official policy, custom or practice of the municipal defendant, and that the policy, custom or practice caused plaintiff's alleged injuries (Def'ts' Mem. in Supp. at 8, citing Jett v. Dallas Indep. School Dist., supra, 491 U.S. at 737; City of Canton, Ohio v. Harris, 489 U.S. 378, 385 (1989), abrogated on other grounds by Farmer v. Brennan, 511 U.S. 825 (1994); Monell v. New York City Dep't of Social Servs., 436 U.S. 658, 690-95 (1979)).

A municipal entity cannot be held liable for constitutional violations under the doctrine of respondeat superior. Healy v. City of New York Dep't of Sanitation, 04 Civ. 7344 (DC), 2006 WL 3457702 at *5 (S.D.N.Y. Nov. 22, 2006) (Chin, D.J.).  In his opposition, plaintiff argues that the Ninth Circuit "as well as a host of district courts have held that Jett did not survive the 1991 Amendments to the Civil Rights Acts" (Pl.'s Mem. in Opp.

at 5, citing Powell v. City of Pittsfield, 143 F. Supp. 2d 94,

111 (D. Mass. 2001)).  Plaintiff admits, however, that the Second

Circuit has not addressed this issue (Pl.'s Mem. in Opp. at 5,

citing Webster v. Fishcher, 694 F. Supp. 2d 163, 195 (N.D.N.Y.

2010)).[18]

      Plaintiff's argument fails.  Numerous district court

decisions within the Second Circuit still rely on Jett for the

proposition that "where the defendant sued for discrimination is

a municipality, or an individual sued in his official capacity,

the plaintiff must show that the challenged acts were performed

pursuant to a municipal policy or custom."  Gutierrez v. City of

New York, 756 F. Supp. 2d 491, 513 (S.D.N.Y. 2010) (Sand, D.J.);

see e.g. Brown v. New York Police Dep't, No. 10-CV-4458 (CBA)(-

LB), 2010 WL 4775066 at *1 (E.D.N.Y. Nov. 16, 2010); Sims v. City

of New York, 08 Civ. 5965 (JGK), 2010 WL 3825720 at *10 (S.D.N.Y.

Sept. 30, 2010) (Koeltl, D.J.).  I conclude, therefore, that Jett

is still good law in this Circuit.

---

    [18]Plaintiff further argues that even if Jett is applicable,
"it applies only to claims against municipalities themselves, and
would not bar plaintiff's claims against the individual
defendants" (Pl.'s Mem. in Opp. at 5).  Defendants do not argue
otherwise with respect to Pavarini and, inexplicably, do not
address plaintiff's argument regarding Jett's validity in the
Second Circuit.

Moreover, defendants correctly note that "plaintiff has offered not one iota of evidence that the alleged violation of his rights was the result of an official policy or custom of the DOE" (Def'ts' Mem. in Further Supp. at 5).  In addition, plaintiff does not allege that Klein had any personal involvement in the conversation between George and Pavarini.

> [U]nder Section 1983 and Section 1981 supervisors can be sued individually, without directly participating in the underlying conduct, only if they promulgated unconstitutional policies or plans under which action occurred, or otherwise authorized or approved challenged misconduct. Stevens v. New York, 691 F. Supp. 2d 392, 400 (S.D.N.Y. 2009) (citing Al-Jundi v. Estate of Rockefeller, 885 F.2d 1060, 1066 (2d Cir. 1989)).  "To lay a proper foundation for individual liability, the plaintiff must plead 'specific, nonconclusory factual allegations' to establish the participation at the necessary mental state of the individual defendants, or [her] claims against them will be dismissed." Id. (citing Blue v. Koren, 72 F.3d 1075, 1083-84 (2d Cir. 1995)).

Bermudez v. City of New York, 10 Civ. 1162 (CM), 2011 WL 1218406 at *36 (S.D.N.Y. Mar. 25, 2011) (McMahon, D.J.).  Plaintiff does not allege that Klein promulgated any unconstitutional policies or plans, or otherwise authorized, caused or knew about Pavarini's alleged conversation with George.  Accordingly, I respectfully recommend that summary judgment be granted with respect to plaintiff's Section 1981 retaliation claim against Klein and the DOE.

48

E.   <u>Plaintiff's State and City Law Claims</u>

Defendants argue that plaintiff's claims asserting

unlawful retaliation in violation of New York Executive Law and

the New York City Administrative Code are subject to the limita-

tions period set forth in New York Education Law § 3813 (2-b)

(Def'ts' Mem. in Supp. at 8-9).   This statute provides:

> Except as provided in subdivision two of this section
> and, notwithstanding any other provision of law provid-
> ing a longer period of time in which to commence an
> action or special proceeding, no action or special
> proceeding shall be commenced against any entity speci-
> fied in subdivision one of this section more than one
> year after the cause of action arose.

<u>See</u> <u>also</u> <u>Matter of Amorosi v. South Colonie Indep. Cent. School</u>

<u>Dist.</u>, 9 N.Y. 3d 367, 370-73, 849 N.Y.S.2d 485, 487-89 (2007),

<u>citing</u> New York Education Law § 3813 (2-b).   This statute applies

to claims against "any school district, board of education . . .

or any officer of a school district, [or] board of education . .

. " (Def'ts' Mem. in Further Supp. at 6, <u>citing</u> Education Law

§ 3813 (1)).

Defendants argue that plaintiff's complaint is untimely

because the conversation between Pavarini and George allegedly

occurred on December 20, 2007, and plaintiff filed his complaint

on February 13, 2009 (Def'ts' Mem. in Supp. at 9).   Plaintiff

argues that this statute does not apply to individual employees

49

such as Pavarini and claims against her are instead governed by
the three year statute of limitations set forth in Executive Law
§ 290 et seq. (Pl.'s Mem. in Opp. at 6).  Plaintiff does not
contest that claims pursuant to New York Executive Law and the
New York City Administrative Code against Klein and the DOE
should be dismissed as untimely.  Plaintiff's state and city law
claims against the DOE clearly come within this statute.

Whether Section 3813 applies to claims against Klein
and Pavarini depends on whether they are considered "officers."
Education Law § 2 defines "school officer" as:

> a clerk, collector, or treasurer of any school dis-
> trict; a trustee; a member of a board of education or
> other body in control of the schools by whatever name
> known in a union free school district, central school
> district, central high school district, or in a city
> school district; a superintendent of schools; a dis-
> trict superintendent; a supervisor of attendance or
> attendance officer; or other elective or appointive
> officer in a school district whose duties generally
> relate to the administration of affairs connected with
> the public school system.

There is conflicting authority addressing whether a principal or
assistant principal can be considered an officer within the
meaning of Section 3813.  Defendants cite Springs v. Bd. of
Educ., 10 Civ. 1243 (RJH), 2010 WL 4068712 at *2 n.2 (S.D.N.Y.
Oct. 14, 2010) (Holwell, D.J.), which held that Section 3813's
one year statute of limitations applies to claims against a
school principal solely because that statute applies to "'any

50

officer of a school district . . . .'" <u>Springs v. Bd. of Educ.,</u>

<u>supra</u>, 2010 WL 4068712 at *2 n.2.  However, in <u>Carlson v. Geneva</u>

<u>City School Dist.</u>, 679 F. Supp. 2d 355, 366-68 (W.D.N.Y. 2010),

the court reasoned that, based on the definition of "school

officer" provided in Section 2, principals and assistant princi-

pals should not be considered school officers.  <u>Carlson v. Geneva</u>

<u>City School Dist., supra</u>, 679 F. Supp. 2d at 367, <u>citing</u> <u>Spencer</u>

<u>v. City of New York</u>, 06 Civ. 2852 (KMW), 2007 WL 1573871 at *3

(S.D.N.Y. May 30, 2007) (Wood, D.J.) <u>and</u> <u>Richards v. Calvet</u>, 99

Civ. 12172 (RJH)(MHD), 2005 WL 743251 at *13 (S.D.N.Y. Mar. 31,

2005) (Holwell, D.J.).  The court in <u>Carlson</u> found that

> it is clear that a principal is not an officer of a
> board of education.  Moreover, although a principal is
> the administrative head of a particular school, such
> position is not a district-wide office.  Further, the
> statutory text of § 3813(2) indicates that administra-
> tors, teachers, and other school employees are not
> included within the scope of § 3813(1): "Notwithstand-
> ing anything to the contrary herein before contained in
> this section, no action or special proceeding founded
> upon tort shall be prosecuted or maintained against any
> of the parties named in this section or against any
> teacher or member of the supervisory or administrative
> staff or employee . . . ."  Education Law § 3813(2)
> (McKinney 2009) (emphasis added).  Such wording indi-
> cates that administrators, teachers, and other school
> employees, are not covered by § 3813(1).  Accordingly,
> a principal is not an "officer of a school district."

<u>Carlson v. Geneva City School Dist., supra</u>, 679 F. Supp. 2d at

367.

The court in <u>Springs</u> did not address the definition of "school officer" in Section 2, therefore I do not find it instructive. I find that the court in <u>Carson</u>, however, provided a well-reasoned analysis of Section 3813 in light of the wording of the statute and definitions in Section 2. Therefore, I conclude that plaintiff's claims against Pavarini are not subject to Section 3813's one year statute of limitations and respectfully recommend that summary judgment of plaintiff's New York Executive Law and the New York Administrative Code claims against Pavarini be denied.

However, Klein, as Chancellor of the BOE (Am. Compl. ¶ 6), is a member of the BOE and should be considered a school officer. Claims against him are subject to a one year statute of limitations provided in Education Law § 3813.

Accordingly, I respectfully recommend that summary judgement be granted dismissing plaintiff's claims that Klein and the DOE violated New York Executive Law and the New York City Administrative Code because they are untimely. I respectfully recommend that summary judgment on those claims against Pavarini be denied because they are not subject to this one year statute of limitations.

F.   Summary

     Accordingly, for all the foregoing reasons, I respect-
fully recommend that summary judgment be granted:  (1) dismissing
plaintiff's Title VII claims against all defendants; (2) dismiss-
ing plaintiff's claims pursuant to New York Executive Law and the
New York City Administrative Code alleging harassment, a hostile
work environment, unequal terms and conditions of employment and
wrongful termination with respect to Klein and the DOE; (3)
dismissing plaintiff's Section 1981 claim of discrimination based
on ancestry with respect to Klein and DOE; (4) dismissing plain-
tiff's Section 1983 claims asserting that Klein and the DOE
violated his constitutional rights of free speech, equal protec-
tion and due process of the law; (5) dismissing plaintiff's
claims pursuant to the New York State constitution asserting that
Klein and the DOE violated his constitutional rights of free
speech, equal protection and due process of the law; (6) dismiss-
ing plaintiff's Section 1981 claim that Klein and DOE unlawfully
retaliated against him; and (7) dismissing plaintiff's claims of
unlawful retaliation pursuant to New York Executive Law and the
New York City Administrative Code with respect to Klein and the
DOE.

I further recommend that summary judgment be denied for: (1) plaintiff's claims pursuant to New York Executive Law and the New York City Administrative Code alleging harassment, a hostile work environment, unequal terms and conditions of employment and wrongful termination with respect to Pavarini; (2) plaintiff's Section 1981 claim of discrimination based on ancestry with respect to Pavarini; (3) plaintiff's Section 1983 claims asserting that Pavarini violated his constitutional rights of free speech, equal protection and due process of the law; (4) plaintiff's claims pursuant to the New York State constitution asserting that Pavarini violated his constitutional rights of free speech, equal protection and due process of the law; (5) plaintiff's Section 1981 claim that Pavarini unlawfully retaliated against him; and (6) plaintiff's claims of unlawful retaliation pursuant to New York Executive Law and the New York City Administrative Code with respect to Pavarini.

IV.  <u>Conclusion</u>

Accordingly, for all the foregoing reasons, I respectfully recommend that defendants' motion for summary judgment be granted in part and denied in part. Specifically, I respectfully recommend that summary judgment be granted for all of plaintiff's claims against Klein and the DOE, as well as for plaintiff's

Title VII claims against Pavarini, and that summary judgment be denied for all other claims plaintiff asserts against Pavarini.

V.   OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from receipt of this Report to file written objections.  See also Fed.R.Civ.P. 6(a).  Such objections (and responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable Jed S. Rakoff, United States District Judge, 500 Pearl Street, Room 1340, and to the Chambers of the undersigned, 500 Pearl Street, Room 750, New York, New York 10007.  Any requests for an extension of time for filing objections must be directed to Judge Rakoff.  FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. Thomas v. Arn, 474 U.S. 140, 155 (1985); United States v. Male Juvenile, 121 F.3d 34, 38 (2d Cir. 1997); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank v.

Johnson, 968 F.2d 298, 300 (2d Cir. 1992); Wesolek v. Canadair

Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v. Manson, 714

F.2d 234, 237-238 (2d Cir. 1983).

Dated:  New York, New York
        August 30, 2011

                                    Respectfully submitted,


                                    HENRY PITMAN
                                    United States Magistrate Judge

Copies transmitted to:

Earl Antonio Wilson, Esq.
Suite 920
299 Broadway
New York, New York 10007

Donna Canfield, Esq.
Camille Barnett, Esq.
Assistant Corporation Counsel
City of New York
Room 2-305
100 Church Street
New York, New York 10007